1  William A. Kershaw (State Bar No. 057486)
   Email: wkershaw@kcrlegal.com
2  Stuart C. Talley (State Bar No. 180374)
   Email: stalley@kcrlegal.com
3  Ian J. Barlow (State Bar No. 262213)
   Email: ibarlow@kcrlegal.com
4  KERSHAW, CUTTER & RATINOFF LLP
   401 Watt Avenue
5  Sacramento, California 95864
6  Telephone:    (916) 448-9800
7  Facsimile:    (916) 669-4499

8  [Additional Counsel Listed on Signature Page]

9  Attorneys for *Plaintiffs*

10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                    OAKLAND DIVISION

14  MONITA SHARMA and ERIC              Case No. CV 13-2274
15  ANDERSON, on behalf of themselves
    and all others similarly situated,       **CLASS ACTION COMPLAINT**
16
17                    Plaintiffs,
              v.
18
    BMW of NORTH AMERICA, LLC, a           **DEMAND FOR JURY TRIAL**
19  Delaware Limited Liability Company,
20                    Defendant.
21

22       Plaintiffs Monita Sharma and Eric Anderson ("Plaintiffs") bring this class action on behalf

23  of themselves and all similarly situated California residents who purchased or leased certain

24  defective BMW vehicles sold in the United States by Defendant BMW of North America, LLC

25  ("BMW" or "Defendant").

26                     **NATURE OF THE ACTION**

27       1.    Throughout the Class Period, BMW designed, manufactured, distributed, sold, and

28  leased various makes and models of BMW vehicles ("Class Vehicles") that contain a serious

-1-

1    design defect that significantly impacts both the safety and value of its vehicles. Specifically,
2    numerous models of BMW vehicles manufactured during the Class Period were designed so that
3    certain vital electrical components known as SDARS, RDC, and PDC Modules, are located in the
4    lowest part of the vehicles' trunk. These Modules are responsible for the safe and effective
5    operation of the vehicle and if they are damaged, can cause the vehicle to lose power while in
6    operation. Because BMW decided to place these vital electrical components in what is essentially
7    the lowest part of the vehicle (the spare tire well under the trunk), they are especially prone to
8    water damage that can be caused through the normal and ordinary use of the vehicle. When this
9    water damage occurs, the vehicles become inoperable and pose a serious safety risk to those who
10   experience this problem. Although these components are highly susceptible to water damage,
11   BMW provides no warnings or advisories to BMW owners about the location of this vital
12   equipment or the importance of keeping the vehicle's trunk compartment free of liquids.

13   2.    To make matters worse, the Class Vehicles were also designed so that drainage
14   tubes used to drain water away from the vehicles' sun roofs are located directly next to the vital
15   electrical equipment that is located in the bottom of the trunk. Unfortunately, these sunroof
16   drains were designed in such a way that they are prone to become clogged with dirt, debris,
17   leaves, and other naturally-occurring materials. When these tubes become clogged, they come
18   loose or leak into the trunks of the vehicles. These leaks, which eventually flood the trunks of the
19   vehicles, cause the vital electronic components contained at the bottom of the vehicles' trunks to
20   short—shutting off certain components of the automobile necessary for driving and creating a
21   potential safety risk.

22   3.    Despite the known vulnerability of water damaging the SDARS, RDC, and PDC
23   Modules and the grave safety risks this creates, BMW has not informed its customers of the
24   defects, but has instead issued a secret service bulletin to various authorized service providers. In
25   this service bulletin, BMW repair facilities are instructed to replace water damaged Modules and
26   move them to another, less vulnerable, location of the trunk. The bulletin also instructs repair
27   facilities to place a permanent warning placard in the trunk that specifically warns owners that
28   there is vital electrical equipment in the trunk and to avoid allowing liquids into this area of the

-2-

CLASS ACTION COMPLAINT

1   vehicle. The service providers are also instructed to verbally notify class members "of the label
2   and the fact that liquids should not be present on or under the trunk insulation, due to the sensitive
3   nature of the electronic control units located in the spare tire well."

4       4.      Despite the obvious defect at issue in this case, BMW refuses to cover the cost of
5   repairs under its warranty. Instead, BMW places the fault on the consumer for improper
6   maintenance of the vehicle. It does this even though owner's manuals and the written
7   maintenance program provide no mention of the electronic equipment in the trunk or what steps
8   should be taken to avoid damaging this equipment.

9       5.      The above described conduct constitutes a breach of warranty and violates both the
10  California Consumer Legal Remedies Act and the California Unfair Competition law. With this
11  action, Plaintiffs seek 1) to obtain a refund for all consumers who incurred out of pocket expenses
12  associated with the repair and/or replacement of water damaged SDARS, PDC, or RDC Modules,
13  2) obtain an injunction ordering BMW to notify class members about the defect at issue and to
14  repair the defect by moving all SDARS, RDC, and PDC Modules pursuant to its own internal
15  service bulletin, and/or 3) a declaration from this Court that any future water damage to the
16  SDARS, PDC, or RDC Modules is a defect covered by BMW's warranty.

17                                      **PARTIES**

18  **A.    Plaintiff, Monita Sharma**

19      6.      Plaintiff Monita Sharma is a citizen of the State of California and a resident of
20  Berkeley, California. Ms. Sharma and her husband purchased a 2008 BMW X5 from
21  Weatherford BMW in San Pedro, California in or around May 2009. The vehicle was sold,
22  distributed, advertised, marketed, and warranted by the Defendant, and bears the Vehicle
23  Identification Number 5UXFE43548L036079. The vehicle was used primarily for personal, non-
24  commercial purposes.

25      7.      Before acquiring her vehicle, Ms. Sharma reviewed and relied on BMW's various
26  marketing and advertising materials, including material on BMW's official website.

27      8.      In late-2012 and early-2013, Ms. Sharma began to experience a series of electrical
28  problems related to water infiltration and accumulation in or around the electronic components

                                       -3-
                          CLASS ACTION COMPLAINT

1 located in the trunk of her vehicle.

2      9.     For example, in September 2012, an EDC warning light appeared and the rear
3 hatch of her vehicle would not open after depressing the rear hatch button in her vehicle nor
4 through the use of her key fob.

5      10.     After taking her car to the local BMW dealership to address these electrical issues,
6 the dealership found moisture around the electronic modules located in the trunk and inspected
7 the sun roof drains in her car. Ms. Sharma paid close to $600 to the BMW dealership to inspect,
8 diagnose and address these problems.

9      11.     On or around January 15, 2013, Ms. Sharma was traveling on the freeway in her
10 BMW vehicle with her two small children in the car. While driving at freeway speeds in traffic,
11 suddenly, without warning, power in her car completely shut down while she was moving at
12 highway speeds from 55 mph to 65 mph. Fortunately for Ms. Sharma and her children, the
13 vehicles traveling around her were able to avoid a collision as she quickly weaved in and around
14 traffic in an attempt to navigate her car towards the shoulder of the highway. She was successful
15 and was able to secure a tow truck to transport her car to the nearest BMW dealership. Ms.
16 Sharma and her children could have been involved in a serious accident. It took Ms. Sharma
17 several days to regain her composure following this incident and she is terrified that her car could
18 fail again at any time while driving, particularly with her children in the car.

19      12.     Upon inspection, the BMW dealership determined that the January 15, 2013
20 incident was caused by a catastrophic electrical malfunction that occurred when water
21 accumulated around the electronic modules in the trunk of her vehicle. As part of the same
22 inspection, the dealership determined that the rear sunroof drains of her vehicle were clogged and
23 had caused the right and left pockets of the trunk space to flood. Upon inspection, the dealership
24 found that the electronic modules in the trunk of Ms. Sharma's car were literally sitting in water.

25      13.     Ms. Sharma asked BMW to cover the cost of the repairs to her car but BMW
26 refused and continues to refuse to pay the amount she paid to repair the vehicle.

27   **B.**    **Plaintiff, Eric Anderson**

28      14.     Plaintiff Eric Anderson is a citizen of the State of California and a resident of

-4-

Pasadena, California. On March 12, 2010, Plaintiff purchased a certified pre-owned 2007 BMW E60 530I automobile with a panoramic sunroof from Crevier BMW of Santa Ana, California, designed, manufactured, marketed, distributed, and sold by BMW.

15.     Mr. Anderson acquired and used his vehicle primarily for personal, family, or household purposes. The vehicle was sold, distributed, advertised, marketed, and warranted by the Defendant, and bears the Vehicle Identification Number WBANE73597CM55703.

16.     Before acquiring his vehicle, Mr. Anderson reviewed and relied on BMW's various marketing and advertising materials, including material on BMW's official website.

17.     Two years after purchasing the vehicle, Mr. Anderson parked his car in front of his home, as was his normal practice. After several hours, it began to rain, and water which should have drained off of the roof through the panoramic sunroof's drain tubes wept into the car's trunk because of a common defect in the design of the sunroof drain pipes.

18.     BMW's defective design caused water to pool and collect around the SDARS, RDC, and PDC Modules, which BMW chose to locate in the lowest point of the automobile's trunk.

19.     Mr. Anderson experienced difficulties with some of the car's electronic components, expressed as a failure to start. He took his automobile to BMW of Monrovia in Monrovia, California, where they informed him of the pooling water in his trunk, and that they would repair the problem, but that it would not be covered under the certified, pre-owned warranty.[1]

20.     The repair to the problem consisted of permanently sealing two of the four sunroof drain tubes, and re-locating the electronic components from the lowest point in the vehicle's trunk to a higher point in the vehicle via the use of Velcro and wire ties. This was done in accordance with a BMW service bulletin. BMW also drilled drainage weep holes in the floor pan of the trunk.

---

[1] All certified, pre-owned BMW vehicles come with a 6-year/100,000-mile protection plan and are "thoroughly inspected by a BMW-trained technician." *See* BMW Certified Pre-Owned Information, http://www.bmwusa.com/standard/content/cpo/default.aspx (last accessed Nov. 10, 2012).

CLASS ACTION COMPLAINT

1    21.    Mr. Anderson paid $2,206.28 for this repair, which, despite correcting a defect that
2    was part of the design of the vehicle, was not covered by BMW.

3    22.    Mr. Anderson contacted BMW of North America, LLC, and was informed that,
4    despite the fact that his certified pre-owned car came with a 6-year/100,000-mile warranty, BMW
5    would not cover the repairs nor issue him a refund for the repairs.

6    23.    Instead of acknowledging the defect, BMW informed Mr. Anderson that he needed
7    to regularly clean and service the sunroof drains of his car and avoid having fluids enter the trunk;
8    however, his user manual contains no information on this recommended "maintenance."

9    24.    Mr. Anderson has since asked BMW to reconsider their position and cover the cost
10   of the repairs to his car, performed pursuant to BMW's service bulletin.  BMW continues to
11   refuse his request.

12   **C.    Defendant**

13   25.    Defendant BMW of North America, LLC, is a corporation organized and existing
14   under the laws of the State of Delaware and registered with the California Department of
15   Corporations to conduct business in California.

16   26.    At all times relevant herein, BMW was engaged in the business of designing,
17   manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and
18   other motor vehicles and motor vehicle components in Los Angeles County, California, and
19   throughout the United States of America.

20                            **JURISDICTION AND VENUE**

21   27.    The Court has original jurisdiction over this class action pursuant to 28 U.S.C. §
22   1332 and the Class Action Fairness Act ("CAFA").  Plaintiffs and many other members of the
23   putative Class are residents and citizens of states different from the home state of Defendant.
24   More specifically, Plaintiffs and many class members are California residents whereas Defendant
25   is a resident of Delaware.  Plaintiffs are informed and believe, and based thereon allege, that the
26   amount in controversy in this case, exclusive of interest and costs, exceeds $5,000,000.

27   28.    Venue is proper pursuant to 28 U.S.C. § 1391 in that Plaintiff Monita Sharma
28   resides in this judicial district, purchased her BMW vehicle in this district, and a substantial part

-6-

1   of the events or omissions giving rise to Plaintiff's claims occurred in this district. In addition,

2   Defendant BMW does substantial business in this judicial district, has received substantial benefit

3   from doing business in this judicial district, and has knowingly engaged in activities directed at

4   consumers in this judicial district. Furthermore, a significant number of Defendant's customers

5   are California residents, and the wrongful acts alleged herein have affected members of the

6   putative Class throughout California. California has a significant contact or aggregation of

7   contacts to the claims at issue herein in that BMW promotes, markets, and sells the vehicles at

8   issue in California. Defendant BMW is subject to personal jurisdiction in the State of California

9   and in this judicial district.

## INTRADISTRICT ASSIGNMENT

11      29.     Pursuant to Local Rules 3-5(b) and 3-2(d), assignment to the Oakland Division is

12   proper because Plaintiff Monita Sharma resides in Contra Costa County and a substantial part of

13   the events or omissions giving rise to the claims occurred in Contra Costa and Alameda counties.

## FACTUAL ALLEGATIONS

15   **A.     The Defect**

16      30.     BMW-designed X5 series vehicles (from 1999 to 2006), X3 series vehicles (from

17   2003 to 2010), and 5 series vehicles (from 2004 to 2010) (the "Class Vehicles") are equipped

18   with SDARS, RDC, and PDC Modules. These modules control critical and important aspects of

19   the vehicle and must operate properly in order for the vehicles to run. Additionally, all Class

20   Vehicles come equipped with sunroofs containing four drain tubes, two of which are in close

21   proximity to the SDARS, RDC, and PDC Modules. These drain tubes are prone to clogging and

22   leaking within the body of the car.

23      31.     In the Class Vehicles the SDARS and PDC Modules are located in the lowest

24   point of the trunk where they are prone to damage and failure due to water exposure. Water can

25   enter the trunk through normal use of the vehicle and clogs in the sunroof drains.

26   **B.     BMW's Owners Manuals**

27      32.     Every BMW vehicle owned or leased by class members comes with an owner's

28   manual. The purpose of the manual is to provide owners with "important data and instructions

-7-

1   intended to assist [class members] in gaining maximum use and satisfaction from [their] BMW's
2   unique range of technical features." The manual also claims that it "contains information on
3   maintenance designed to enhance operating safety and contribute to maintaining the value of your
4   BMW throughout an extended service life." The manual is expressly made part of the Warranty
5   for the vehicle. The manual is also described by BMW as "an important component of your
6   vehicle" that should be read thoroughly by all BMW owners. At all times Plaintiffs and class
7   members relied on BMW to provide complete and accurate information about the operation and
8   maintenance of the Class Vehicles to avoid damage to the vehicles and ensure that it is operated
9   safely.

10          33.     In all of the Owner's Manuals provided to class members, BMW provides
11  numerous recommendations, warnings, and precautions that class members should heed when
12  operating and/or using their vehicles. To highlight particular issues, the manuals use specific
13  warning symbols to show "precautions that must be followed precisely in order to avoid the
14  possibility of . . . serious damage to the vehicle."

15          34.     Throughout the Owner's Manuals provided with the Class Vehicles, BMW
16  provides page after page of detailed information concerning the vehicle's trunk, how it should be
17  opened and what steps can be taken to avoid damaging the trunk. For example, BMW warns
18  class members that when they open their trunk lid it "pivots back and up." Therefore, owners
19  should "make sure that adequate clearance is available before opening the trunk." In fact, the
20  owner's manual repeatedly warns consumers to make sure they do not close the trunk lid on their
21  hands.

22          35.     Despite these numerous warnings of obvious dangers, nowhere in the owner's
23  manuals provided to class members, does BMW tell consumers to avoid spilling liquids in the
24  trunk or that located at the bottom of the trunk compartment is vital electrical equipment that will
25  be ruined if water enters the trunk.

26          36.     Additionally, the owner's manual provided with all Class Vehicles contains 3 full
27  pages of detailed instructions concerning how to safely operate and maintain the vehicle's sun
28  roof. Again, the manual provides numerous warnings of obvious dangers such as telling owners

-8-

1   to avoid shutting the roof on their hands. Despite this, the manual says nothing about the

2   drainage tubes, the fact that they are prone to clog, or that if they do become clogged this can lead

3   to catastrophic and expensive damage to the vehicle's vital electronic equipment.

4   **C.    BMW's Maintenance Program**

5       37.    In addition to providing class members with Owner's Manuals that supposedly

6   provide owners with complete and accurate information needed to properly maintain class

7   vehicles, BMW also includes a written Maintenance Program with all Class Vehicles. According

8   to BMW, the Maintenance Program was designed with the following objectives: "to maximize

9   vehicle safety, reliability and resale value by minimizing breakdowns resulting from wear and

10  minimizing cost." BMW describes the Maintenance Program provided with Class Vehicles as a

11  "benefit designed to help reduce the cost of ownership" and that following its maintenance

12  recommendations will "help [class members] maximize [their] satisfaction with [their] BMW, its

13  longevity, and resale value."

14      38.    The written Maintenance Program provided with each Class Vehicle provides a

15  long list of things that class members must do to their vehicles on a regular basis to maximize its

16  "longevity and resale value." This list includes maintenance such as changing the oil, checking

17  the brake pads, and changing vital fluids. The Program also provides a long list of inspections

18  that should be performed to ensure that all aspects of the vehicles are operating properly. Those

19  inspections include visual inspections of the headlights, flashers, seatbelts, windshield wipers,

20  review mirrors, tires, etc.

21      39.    Despite providing numerous details concerning how Class Vehicles should be

22  maintained in order to ensure their longevity and resale value, nowhere in the written

23  Maintenance Program does BMW warn consumers that critical electronic equipment in the

24  vehicle is highly vulnerable to water damage or that the vehicles' sun roof drainage tubes can be

25  easily clogged and lead to the damage of this vital equipment. In fact, nowhere in the

26  maintenance program does BMW advise consumers about the existence of the drainage tubes,

27  that they can become easily clogged with debris, or that they should be cleaned on a regular basis.

28  As a result, all BMW owners are put at extreme risk of serious injury and/or damage to their

-9-

1    vehicles.

2    **D.    BMW's Warranty**

3        40.    All Class Vehicles come with a New Vehicle Limited Warranty and/or an
4    extended limited warranty. (collectively "BMW Warranty").

5        41.    Under the BMW Warranty, BMW warrants all class vehicles "against defects in
6    materials or workmanship." Vehicles that are found to have a defect will be repaired "without
7    charge for parts or labor." The Warranty expressly excludes damage to the vehicles caused by
8    "lack of or improper maintenance" and damage caused by the "failure to maintain the vehicle
9    properly in accordance with the instructions in the Owner's Manual . . . that result in the failure
10   of any part of the vehicle."

11   **E.    BMW Conceals the Defect From Its Customers and Refuses To Pay for Repairs**

12       42.    As described above, the Class Vehicles present a safety hazard and are
13   unreasonably dangerous to consumers because of the danger of catastrophic electrical system
14   failure as a result of the vulnerable location of its key electrical components. As a result, the
15   vehicles are unsafe to drive.

16       43.    At all relevant times, BMW expressly told Plaintiffs and class members that its
17   Owner's Manuals and written Maintenance Program provided complete and accurate information
18   concerning the risks associated with its vehicles and the maintenance that should be performed in
19   order to ensure that the vehicle could be operated safely. Plaintiffs and class members relied on
20   the accuracy and completeness of these vital written documents when deciding to purchase their
21   vehicles. However, as described above, the Owner's Manual and Maintenance Program are
22   incomplete and fail to provide vital information about known risks associated with the Class
23   Vehicles

24       44.    Only after purchasing or leasing their vehicles were Plaintiffs or class members
25   able to determine that the Class Vehicles are highly prone to interior flooding and the potential
26   catastrophic failure of its electrical components. They learn this only after water floods their
27   vehicle's trunks and causes extensive interior damage to the electronic components located under
28   the spare tire in the trunk of the vehicle, disrupting operational use of the vehicle, and causing the

-10-

1   car to undergo extensive and expensive repairs.

2       45.     The cost to repair the defects described herein are exorbitant because consumers

3   will be required to pay hundreds, if not thousands of dollars to repair damage to the Class

4   Vehicles' electrical systems and the other damage which will occur as a result of flooding.

5       46.     Moreover, the defects described herein materially impact the value of the Class

6   Vehicles since few, if any, consumers would ever purchase a Class Vehicle knowing they are

7   unsafe and prone to breakdown as a result of water damage.

8       47.     If Plaintiffs and class members had known about the aforementioned design

9   defects and the danger posed by such design defects at the time of sale or lease, Plaintiffs and

10  members of the Class would not have purchased or leased their vehicles and/or would have

11  refused to pay for repairs that BMW had a duty to provide without charge.  As a result of their

12  reliance on BMW's omissions and/or misrepresentations, owners and/or lessees of vehicles

13  manufactured by BMW, class members have suffered ascertainable loss of money and/or property

14  and/or loss in value of their vehicles.

15      48.     BMW knew or should have known that the location of the Class Vehicles'

16  electrical components were defective and not fit for their intended purpose.  Nevertheless, BMW

17  actively concealed and failed to disclose this defect to Plaintiffs and the putative class members at

18  the time of purchase or lease and thereafter.

19      49.     BMW intentionally represented, either affirmatively or by omission, that its

20  vehicles were free from defects, and took no action to adequately warn or remedy the defect, but

21  instead concealed, suppressed, and failed to disclose the potential damage that could be caused by

22  such design defects.

23      50.     In fact, BMW systematically, purposefully, and fraudulently concealed the defects

24  and misled customers by telling them that any problems in connection with the defects were

25  actually caused by customers' failure to maintain their vehicles properly and/or by "outside

26  influences"—by claiming, for example, that the flooding in the trunk and electronic damage was

27  not due to design defects but rather due to the customer's failure  to clean out the sun roof drain

28  tubes and/or even telling class members that such damage was merely due to weather.

-11-

1    51.    At no point, however, do BMW's own maintenance or service manuals make

2 reference to or provide any instruction on how customers can avoid having their drains clog, nor

3 has BMW issued any Technical Service Bulletins regarding the process of how such defective

4 sunroof drains should be cleaned.

5    52.    Despite its awareness and actual knowledge of the design defects referenced herein

6 and the attendant problems evidenced by, among other things, a great number of customer

7 complaints, BMW continues to fail to warn, or even mention, anything about the location of the

8 Class Vehicles electrical components or the flood-causing sunroof drain defect through its agents

9 or in the owner's manual or any of its marketing materials.

10    53.    BMW knew that the defective design of the Class Vehicles were causing

11 substantial problems for the putative class members; however, upon information and belief,

12 BMW has systematically refused to pay for repairs required to putative class members' vehicles

13 caused by the uniform defects described herein.

14    54.    While the damages are caused by BMW's defectively designed vehicles and while

15 numerous customers have requested that BMW remedy and/or address the design defects and the

16 resulting flooding problems at BMW's own expense, BMW and its agents have failed and/or

17 refused to do so.

18    55.    To date, BMW has failed to warn or inform their customers of the known design

19 defects, and actively concealed these defects from consumers and Plaintiffs and other class

20 members.

21    56.    At the same time, unknown to most (if not all) class members, BMW issued

22 service bulletins to its authorized service technicians to perform certain repairs to minimize the

23 impact of the defect including relocating the electronic components from the lowest point in the

24 trunk to a higher point in the trunk that would not subject the electronic components to damage

25 caused by leaks and standing water through ordinary and expected use of the vehicles.  The

26 service bulletin also requires service centers to install a warning label advising consumers to

27 avoid spilling liquids in the trunk of the vehicle.

28    57.    Despite issuing a service bulletin, and notice of the defect from numerous

-12-

1    consumer complaints, dealership repair orders, and other sources, BMW has not recalled the

2    Class Vehicles to repair the defect, has not offered all of its customers a suitable repair,

3    modification, or replacement of the defective components free of charge, and has not offered to

4    reimburse the class members who incurred costs relating to flooding and the subsequent damage

5    and failure of the electronic component parts located in the Class Vehicles' trunks.

6        58.    As a result of BMW's conduct alleged herein, Plaintiffs and class members have

7    been harmed and have suffered actual damages in that the electronic component parts located in

8    the Class Vehicles' trunks are experiencing continuous and progressive failure problems, and will

9    continue to fail before their expected useful life has run.

10                       **TOLLING OF THE STATUTE OF LIMITATIONS**

11        59.    Since the defects in the design or manufacture of the Class Vehicles cannot be

12    detected until the defect manifests, Plaintiffs and the class members were not reasonably able to

13    discover the problem until after purchasing or leasing the Class Vehicles, despite the exercise of

14    due diligence.

15        60.    Plaintiffs and the class members had no realistic ability to discern the Class

16    Vehicles' defects until after water collected in the trunk near the electrical components of the

17    Class Vehicles. In addition, despite their due diligence, Plaintiffs and the class members could

18    not reasonably have been expected to learn or discover that they were deceived and that material

19    information concerning the vulnerability of the trunk's electrical components was concealed from

20    them until after the manifestation of the failure. Therefore, the discovery rule is applicable to the

21    claims asserted by Plaintiffs and the class members.

22        61.    Moreover, BMW is under a continuous duty to disclose to the Plaintiffs and the

23    class members the true character, quality, and nature of the Class Vehicles and to disclose the

24    existence of any defects. BMW knowingly, affirmatively, and/or actively concealed the true

25    character, quality, and nature of the defects at issue. Furthermore, Plaintiffs reasonably relied

26    upon BMW's knowing, affirmative, and/or active concealment. Based on the foregoing, BMW is

27    estopped from relying on any statutes of limitation in defense of this action.

28        62.    The causes of action alleged herein did or will accrue only upon discovery of the

                                              -13-
                               _____
                                   CLASS ACTION COMPLAINT

1   defects referenced herein, BMW's refusal to cover the repairs of the Class Vehicles, and BMW's

2   fraudulent concealment of the defect. Plaintiffs and class members did not discover and could not

3   have discovered through the exercise of reasonable diligence the true nature of the defect.

4   **CLASS ACTION ALLEGATIONS**

5       63.   Plaintiffs bring this action both individually and as a class action pursuant to Fed.

6   R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against BMW on their own behalf and on behalf of the

7   Injunctive/Declaratory Class and Breach of Warranty Sub-Class (collectively, the "Class")

8   defined below.

9       64.   Plaintiffs bring this class action on behalf of themselves and the following

10   proposed Class:

11       All persons in California who currently own or lease, or who have
owned or leased, any BMW X5 series vehicles, X3 series vehicles,

12       and 5 series vehicles.

13

      65.   Plaintiffs also bring this class action on behalf of the following proposed Sub-

14   Class:

15

      <u>Breach of Warranty Sub-Class</u>

16       All persons in California who currently own or lease, or who have owned
or leased, any BMW X5 series vehicles, X3 series vehicles, and 5 series

17       vehicles and, who submitted their vehicle for repairs under the vehicle's
warranty for water damage to any RCDC Module, SDARS Module or

18       PDC Module and incurred out of pocket expenses as a result of BMW's

19       refusal to make the repairs under the vehicles' warranty.

20       66.   Subject to additional information obtained through further investigation and

21   discovery, the foregoing definitions of the Class and Sub-Class may be expanded or narrowed by

22   amendment or amended complaint. Specifically excluded from the proposed Class and Sub-Class

23   are business entities for purposes of Plaintiff's claim for relief under the California Consumers

24   Legal Remedies Act, Civil Code § 1750, *et seq.* Also specifically excluded are BMW, its

25   officers, directors, agents, trustees, parents, children, corporations, trusts, representatives,

26   employees, principals, servants, partners, joint venturers, or entities controlled by BMW, and its

27   heirs, successors, assigns, or other persons or entities related to or affiliated with BMW and/or its

28   officers and/or directors, or any of them; the Judge assigned to this action, and any member of the

-14-

1    Judge's immediate family.

2        67.    Numerosity.    Though the exact number and identity of class members is not

3    presently known, they can be identified in BMW's records through coordinated discovery

4    pursuant to this class action. Plaintiffs believe that hundreds of thousands of BMW vehicles

5    equipped with the defectively-designed sunroof drains and trunk electronic components have

6    been sold or leased in the United States, including in the State of California.

7        68.    Existence and predominance of common questions.    Common questions of fact

8    and law predominate over any questions affecting only individual members of the Class and Sub-

9    Class. The predominating common or class-wide questions of fact include the following:

10           a.    Whether the location of the Class Vehicles' electronic components and sun

11   roof drains constitute a product defect;

12           b.    Whether the class Vehicles' Owner's Manuals, written Maintenance

13   Program, and product labeling sufficiently warn consumers about the dangers associated with the

14   Class Vehicles;

15           c.    Whether BMW's inadequate maintenance recommendations cause

16   significant safety risks or additional damage to the Class Vehicles;

17           d.    Whether BMW knowingly failed to disclose and warn of the electronic

18   component placement defect with the intent that others rely upon such concealment, suppression,

19   or omission;

20           e.    Whether Plaintiffs and class members are entitled to entry of final

21   injunctive relief compelling BMW to recall, inspect and, as necessary, effectively repair and/or

22   replace the electronic component defects referenced herein;

23           f.    Whether Plaintiffs and class members are entitled to entry of final

24   injunctive relief compelling BMW to fully and adequately inform consumers of the electronic

25   component placement design defect and/or inadequate maintenance recommendations;

26           g.    Whether BMW had a duty to disclose to its consumers material facts

27   concerning the serious problems that would inevitably result from its inherently defective design

28   in the sunroof drains and placement of electronic component parts;

-15-

1       h.      Whether BMW's conduct as alleged herein constitutes a violation of the

2   California Consumer Legal Remedies Act and the California Unfair Competition law;

3       i.      Whether BMW's refusal to repair vehicles that have suffered water damage

4   constitutes a breach of Express Warranty;

5       j.      Whether BMW should issue a maintenance directive on checking the

6   sunroof drains for clogs as a part of its recommended scheduled maintenance service.

7       69.     BMW's defenses, to the extent that any such defenses apply, are applicable

8   generally to Plaintiffs and the entire Class and Sub-Class and are not distinguishable as to

9   proposed class members.

10      70.     Typicality. Plaintiffs' claims are typical of the claims of the class members, as all

11  class members were and are similarly affected by BMW's wrongful conduct complained of

12  herein.  Plaintiffs and each of the class members lease or leased and/or own or own BMW

13  vehicles designed with a defective placement of electronic component parts in the trunk of the

14  Class Vehicles, which are subject to catastrophic failure due to their placement in a vulnerable

15  position.

16      71.     Adequacy. Plaintiffs are adequate representatives of the Class and Sub-Class

17  because their interests do not conflict with the interests of the class members they seeks to

18  represent. Plaintiffs have retained counsel highly experienced in the prosecution of complex class

19  action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and their

20  counsel will fairly and adequately protect the interests of all members of the Class and Sub-Class.

21      72.     Superiority. A class action is superior to any other methods available for both fair

22  and efficient adjudication of the rights of each class member.   Joinder of individual class

23  members is impracticable.  Individual litigation would be unnecessarily costly and burdensome

24  and would deter individual claims. To process individual cases would increase both the expenses

25  and the delay not only to class members, but also to BMW and the Court.  In contrast, a class

26  action in this matter will avoid case management difficulties and provide multiple benefits to the

27  litigating parties, including efficiency, economy of scale, unitary adjudication with consistent

28  results and equal protection of the rights of each class member, all by way of the comprehensive

-16-

1    and efficient supervision of the litigation by a single court.

2         73.    The Class and Sub-Class may be certified because:

3              a.      The prosecution of separate actions by individual class members would

4    create a risk of inconsistent or varying adjudications with respect to individual members of the

5    proposed Class and Sub-Class that would establish incompatible standards of conduct for BMW;

6              b.      The prosecution of separate actions by individual class members would

7    create a risk of adjudications with respect to them which would, as a practical matter, be

8    dispositive of the interests of other class members not parties to the adjudications, or substantially

9    impair or impede their ability to protect their interests; and

10             c.      BMW has acted or refused to act on grounds generally applicable to the

11   class members, thereby making appropriate final and injunctive relief with respect to class

12   members as a whole.

13                            **FIRST CLAIM FOR RELIEF**

14                     **(For Declaratory Relief on Behalf of the Class)**

15        74.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

16   herein.

17        75.    There is an actual controversy between BMW and class members concerning the

18   existence of defects in the Class Vehicles and whether the repair of such defects should be

19   covered under the Class Vehicle's Warranty.

20        76.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal

21   relations of any interested party seeking such declaration, whether or not further relief is or could

22   be sought."

23        77.    As described herein, the Class Vehicles were designed in such a way that makes

24   them unsafe and susceptible to flooding. Such water intrusion can and does lead to the

25   catastrophic failure of electronic component parts in the trunk of the Class Vehicles.

26        78.    Accordingly, Plaintiffs and class members seek a declaration that the Class

27   Vehicles have common defects in their design and/or manufacture and that any future repairs

28   involving water damage to electronic equipment in the trunk of the vehicle as described herein

1    should be covered under the Class Vehicles' warranty and any extended warranty sold by BMW

2    to class members.

3                                    **SECOND CLAIM FOR RELIEF**
                               **(For Violations of the Consumers Legal Remedies Act,**
4                              **Cal. Civ. Code § § 1750, *et seq.*, on Behalf of the Class)**

5            79.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

6    herein.

7            80.    BMW is a "person" within the meaning of Civil Code § § 1761(c) and 1770.

8            81.    BMW sells "goods" within the meaning of Civil Code § § 1761(a) and 1770.

9            82.    Plaintiffs and the Class are consumers within the meaning of Civil Code §

10   1761(d)

11           83.    Plaintiffs' purchase of a BMW vehicle equipped with defective electronic

12   component placement marketed and sold by BMW constitutes a transaction within the meaning of

13   Civil Code §§ 1761(3) and 1770.

14           84.    BMW's conduct violated and continues to violate the CLRA in at least the

15   following respects:

16           a.    In violation of section 1770(a)(5) of the CLRA, BMW represented that

17   goods (*i.e.* its vehicles) have characteristics or benefits which they do not have.

18           b.    In violation of section 1770(a)(7) of the CLRA, BMW represented that

19   goods are of a particular standard, quality, or grade when they are of another; and

20           c.    In violation of section 1770(a)(9) of the CLRA, BMW advertised goods

21   with the intent not to sell them as advertised.

22           85.    BMW engaged in these unfair or deceptive acts and practices with the intent that

23   they result, and which did result, in the sale of the subject vehicles to Plaintiffs and the Class.

24           86.    By engaging in unfair or deceptive conduct in violation of the CLRA, BMW

25   actively concealed and failed to disclose material facts about the true characteristics of the

26   transaction leading to Plaintiffs' and class members' purchase of the subject vehicles.

27           87.    The fact that consumers were entering into a sale for a vehicle prone to flooding

28   and damage due to defectively-placed electronic component parts and defectively-designed

                                        -18-

1   sunroof drains is material in that a reasonable person would have considered that an important

2   factor in deciding whether to complete the transaction for the subject vehicle. Specifically, the

3   fact that the BMW purchased by Plaintiffs were defective in that it was prone to flooding, water

4   damage and potentially dangerous failure of vital electronic component parts is material to them.

5   Plaintiffs would likely not have purchased the subject vehicle had they known of that fact.

6       88.    As a direct and proximate result of BMW's violations of law, Plaintiffs and the

7   class members have been injured. Pursuant to the provisions of Civil Code section 1782(d), on

8   March 1, 2013, Plaintiffs provided notice by certified mail to BMW of their intention to seek

9   damages under Civil Code sections 1750, *et seq.*, unless BMW corrects, repairs, replaces or

10   otherwise rectifies its violations of the CLRA. Despite receiving this notice, BMW failed to

11   adequately respond to Plaintiffs' demand within thirty (30) days from the date the notice was

12   serviced. As such, the class members are entitled to actual and punitive damages along with

13   restitution and disgorgement of all earnings, profits, compensation and benefits obtained by

14   BMW as a result of their violations of the CLRA.

15       89.    Plaintiffs seek an order enjoining the unlawful practices described herein and an

16   Order requiring BMW to notify the class members of its violations of the CLRA and the remedy

17   it will provide to them.

18   **THIRD CLAIM FOR RELIEF**

19   **(For Violations of Cal. Bus. & Prof. Code § § 17200, *et seq.*,**
**on Behalf of the Class)**

20       90.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

21   herein.

22       91.    BMW's practices as alleged in this Complaint constitute unlawful, unfair, and

23   fraudulent practices under the Unfair Competition Law, Business and Professions Code section

24   17200, *et seq.* ("UCL").

25       92.    BMW committed unlawful acts and practices by, among other things, engaging in

26   conduct, as alleged herein, that violates the CLRA, Cal. Civ. Code §§ 1750, *et seq.*

27       93.    BMW committed unfair business practices by:

28       a.    Engaging in conduct, as alleged herein, where the utility of such conduct, if

-19-

1    any, is outweighed by the gravity of the consequences to Plaintiffs and other class members;

2              b.      Engaging in conduct, as alleged herein, that is immoral, unethical,

3    oppressive, unscrupulous, or substantially injurious to Plaintiffs and the other class members; and

4              c.      Engaging in conduct, as alleged herein, that undermines or violates the

5    stated policies underlying the CLRA, Civ. Code §§ 1750, *et seq.*, which seeks to protect

6    consumers against unfair and sharp business practices and to promote a basic level of honesty and

7    reliability in the marketplace, and thus provide a sufficient predicate for Plaintiffs' claims for

8    unfair business practices.

9         94.    BMW committed fraudulent business practices by engaging in conduct, as alleged

10   herein, that was and is likely to deceive consumers acting reasonably under the circumstances.

11   BMW's fraudulent practices include but are not limited to failing to adequately disclose and/or

12   concealing from Plaintiffs and class members that electronic components in the Class Vehicles'

13   trunks are prone to failure due to their placement and susceptibility to water exposure, or that

14   cleaning sun roof drains should be part of scheduled and routine maintenance to prevent property

15   damage.

16        95.    Plaintiffs and the class members have suffered injury in fact and have lost money

17   and property as a result of BMW's unlawful, unfair, or fraudulent practices, in that, among other

18   things:

19             a.      Plaintiffs and class members would not have paid for the subject vehicles

20   had they know the vehicles contained such defects;

21             b.      Plaintiffs and class members have been deprived of making an informed

22   decision about the vehicles they have purchased; and

23             c.      Plaintiffs and class members have incurred out of pocket expenses to repair

24   electrical components damaged as a result of water intrusion.

25        96.    The above-described unfair, unlawful and fraudulent business practices conducted

26   by BMW present a threat and likelihood of harm and deception to members of the Class in that

27   BMW has systematically perpetrated and continue to perpetrate the unfair, unlawful and

28   fraudulent conduct upon members of the public by engaging in the conduct described herein.

-20-

97.     Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiffs, on behalf of themselves and the Class, seeks an order enjoining BMW from continuing to engage in unlawful, unfair or fraudulent business practices, and other acts prohibited by law. Plaintiffs also seeks an order providing restitution for monies paid for repairs and maintenance associated with the sunroof drain defect, and other appropriate injunctive relief.

## FOURTH CLAIM FOR RELIEF
### (Negligence, on Behalf of the Class)

98.     Plaintiffs reallege and hereby incorporate all proceeding paragraphs as if they were fully set forth herein.

99.     BMW had a duty to the Plaintiffs and class members, as a manufacturer of vehicles, to design, manufacture, produce, test, inspect, market, distribute, and sell vehicles free from material defects. Additionally, BMW had a duty to warn purchasers (through its Owner's Manuals and written Maintenance Procedures) to accurately and completely warn class members of steps they should take to avoid damaging their vehicles.

100.     BMW breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the Class Vehicles and failing to provide all appropriate warnings in the Class Vehicle Owner's Manuals and Maintenance Procedures.

101.     As set forth more fully above, BMW knew or should have known that the Class Vehicles they designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, in ordinary and foreseeable use, would fail to perform as intended.

102.     BMW knew or should have known that the defective placement of the electronic component parts, created a defect that could cause property damage, and the potential for failure of the electronic component parts in such a way that could become a safety risk or cause injury.

103.     Based on this knowledge, BMW had a duty to disclose to Plaintiffs and class members the safety risks posed by the Class Vehicles and a duty to disclose the defective nature of the Class Vehicles.

104.     BMW had a further duty not to put the defective Class Vehicles on the market, or to recall the defective Class Vehicles for repairs to the sunroof drains and defectively-designed

-21-

1    electronic component systems in the trunk of the Class Vehicles.

2        105.    BMW failed to exercise reasonable care with respect to the design, manufacture,

3    production, testing, inspection, marketing, distribution and sale of the Class Vehicles by, among

4    other things, failing to design and manufacture the Class Vehicles in a manner to ensure that,

5    under normal intended usage, complete and total failure of the sunroof drain system and Class

6    Vehicles' trunk's electronic component parts would not occur.

7        106.    BMW failed to exercise reasonable care when it knew of the safety risks the Class

8    Vehicles posed and failed to replace, repair or recall Class Vehicles it knew or should have

9    known were unsafe and defective.

10       107.    As a direct and proximate result of BMW's negligence, Plaintiffs and class

11   members bought the Class Vehicles without knowledge of the defect or of their safety risks.

12       108.    As a direct and proximate result of BMW's negligence, Plaintiffs and class

13   members have suffered damages in that they purchased vehicles that are unsafe and defective.

14       109.    BMW was unjustly enriched by keeping the profits from the sales of the defective

15   Class Vehicles while never having to incur the cost of repair, replacement, or a recall.

16       110.    BMW's breach of its duty to consumers proximately caused financial loss to

17   Plaintiffs and class members in an amount to be determined at trial.

18                        **FIFTH CLAIM FOR RELIEF**
19                   **(Injunctive Relief, on Behalf of the Class)**

20       111.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

21   herein.

22       112.    BMW designed, manufactured, produced, tested, inspected, marketed, distributed,

23   and sold the Class Vehicles that contain a material defect as described above.

24       113.    Based upon information and belief, BMW continues to market, distribute, and sell

25   Class Vehicles that contain the material defect and have done nothing to remove the Class

26   Vehicles containing the defect described herein from the market or to otherwise take steps to

27   render the vehicles safe.

28       114.    The defect described herein poses a potential safety risk to consumers and

-22-

CLASS ACTION COMPLAINT

1   members of the general public, because the placement of vital electronic components in the

2   lowest portion of the Class Vehicles' trunks, where they are prone to damage and complete

3   failure from any leaks (in particular, those leaks from the defective sunroof drains), could result in

4   dangerous driving conditions.

5       115.   Upon information and belief, BMW has taken no corrective action concerning the

6   defects described herein, and has not issued any warnings or notices concerning the defect, nor

7   issued a replacement recall.

8       116.   Plaintiffs and class members have suffered actual damage or injury or are in

9   immediate risk of suffering actual damage or injury due to the Class Vehicles' Defects.

10      117.   BMW should be required to take corrective action to avoid the safety risk the

11  Class Vehicles pose, including: issuing a nationwide recall and replacement of the defective

12  component parts; issuing warnings and/or notices to consumer and the class members concerning

13  the Class Vehicles' defects and the safety issues posed; and, if BMW has not already done so,

14  immediately discontinue the sale of the Class Vehicles with defective sunroof drains and

15  defectively-placed electronic component parts that have not been repaired.

16              **SIXTH CLAIM FOR RELIEF**
                **(Breach of Express Warranty, on Behalf of the Breach**
17                      **of Warranty Sub-Class)**

18      118.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

19  herein.

20      119.   As set forth above, the written warranty provided to Plaintiffs and the Class

21  specifically identifies that, if their vehicle fails to operate in a safe and reliable manner, Defendant

22  would make all necessary repairs to and/or replacement of any defective parts found, during the

23  vehicle's warranty period.

24      120.   Plaintiffs and members of the Breach of Warranty Sub-Class submitted their

25  Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of

26  the express written warranty provided to each Class member, by failing and/or refusing to repair

27  and/or replace the subject defective part under the vehicle's warranty as described herein .

28      121.   The acts of Defendant in failing and/or refusing to repair and/or replace the

-23-

1  vehicles during the warranty period so as to bring the vehicles into conformity with the express
2  warranties, deprived Plaintiffs and members of the Breach of Warranty Sub-Class of their rights
3  guaranteed them under the express warranties offered by Defendant.

4      122.  As a direct and proximate result of the willful failure of Defendant to comply with
5  its obligations under the express warranties, Plaintiffs and members of the Breach of Warranty
6  Sub-Class have suffered actual and consequential damages. Such damages include, but are not
7  limited to, the cost of repairing the vehicles, the loss of the use and enjoyment of their subject
8  vehicle, and a diminution in the value of the vehicle containing the defects identified herein. The
9  precise amount of these damages is unknown at the present time but is in excess of the
10  jurisdictional limits of this Court.

11  ## PRAYER FOR RELIEF

12      **WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray
13  for judgment against BMW as follows:

14      A.  An Order certifying this action as a class action;

15      B.  An Order appointing Plaintiffs as class representative and appointing counsel
16  undersigned to represent the Class and Sub-Class;

17      C.  A Declaration that the Class Vehicles are defective;

18      D.  An Order awarding injunctive relief by requiring BMW to issue corrective actions
19  including notification, recall, and repair of the Class Vehicles;

20      E.  Payment to the Class and Sub-Class of all damages associated with the
21  replacement of the defective products, in an amount to be proven at trial;

22      F.  Restitution as authorized by law;

23      G.  An award of attorneys' fees and costs, as provided by law and/or as would be
24  reasonable from any recovery of monies recovered for or benefits bestowed on the class;

25      H.  Interest as provided by law, including but not limited to pre-judgment and post-
26  judgment interest as provided by rule or statute; and

27      I.  Such other and further relief as this Court may deem just, equitable, or proper.

28

-24-

1

## DEMAND FOR JURY TRIAL

2          Plaintiffs hereby demand a trial by jury on all issues so triable.

3

4     Dated: May 17, 2013

5     By: _____
                    STUART C. TALLEY

6          KERSHAW, CUTTER & RATINOFF LLP
7          William A. Kershaw
           Stuart C. Talley
8          Ian J. Barlow
           wkershaw@kcrlegal.com
9          stalley@kcrlegal.com
           ibarlow@kcrlegal.com
10         401 Watt Avenue
           Sacramento, California 95864
11         Telephone:    (916) 448-9800
           Facsimile:    (916) 669-4499

12         WEXLER WALLACE LLP
13         Edward A. Wallace
           Amy E. Keller
14         eaw@wexlerwallace.com
           aek@wexlerwallace.com
15         55 West Monroe Street, Suite 3300
           Chicago, Illinois 60603
16         Telephone:    (312) 346-2222
           Facsimile:    (312) 346-0022

17         THE LAW OFFICES OF JOSEPH R. SANTOLI
18         Joseph R. Santoli
           josephsantoli@aol.com
19         340 Devon Court
           Ridgewood, New Jersey 07450
20         Telephone:    (201) 926-9200
           Facsimile:    (201) 575-2184

21         WIGINGTON RUMLEY DUNN, L.L.P
22         Joseph M. Dunn
           jdunn@wigrum.com
23         601 Howard St.
           San Antonio, Texas 78212
24         Telephone:    (210) 487-7500
           Facsimile:    (210) 487-7501

25         Attorneys for *Plaintiffs*

26

27

28

-25-

## DECLARATION OF STUART C. TALLEY
## PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)

I, Stuart C. Talley, declare as follows:

1.      I submit this declaration pursuant to section 1780(d) of the California Consumers Legal Remedies Act. I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.

2.      Defendant BMW of North America, LLC is a Delaware corporation with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. BMW of North America, LLC was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in San Francisco County, California, and throughout the United States of America.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on May 17, 2013 in Sacramento, California.

_____
STUART C. TALLEY

-26-