IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MONITA SHARMA and ERIC ANDERSON, on behalf of themselves and all others similarly situated,

    Plaintiffs,

    v.

BMW OF NORTH AMERICA, LLC,,

    Defendant.
_____/

No. C-13-2274 MMC

**ORDER DIRECTING PLAINTIFFS TO SHOW CAUSE WHY CLAIM FOR INJUNCTIVE RELIEF SHOULD NOT BE DISMISSED FOR LACK OF STANDING, OR, IN THE ALTERNATIVE, AFFORDING PLAINTIFFS LEAVE TO AMEND**

Before the Court are two motions, filed August 29, 2013, by defendant BMW of North America, LLC ("BMW"): (1) "Motion to Dismiss for Lack of Standing and Failure to State a Claim"; and (2) "Motion to Strike Class Allegations." Plaintiffs Monita Sharma ("Sharma") and Eric Anderson ("Anderson") have filed opposition to each motion; BMW has filed replies to each opposition. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

Plaintiffs, who seek to proceed on their own behalf and on behalf of a putative class of owners and former owners of certain BMW vehicles, allege they each purchased a BMW that contained a design defect. In particular, according to plaintiffs, their vehicles "were designed so that certain vital electrical components known as SDARS, RDC, and

---

[1] By order filed November 12, 2013, the Court took the matters under submission.

PDC Modules, are located in the lowest part of the vehicles' trunk," specifically, "the spare tire well under the trunk," and, in addition, were "designed so that drainage tubes used to drain water away from the vehicles' sun roofs are located directly next to the vital electrical equipment that is located in the bottom of the trunk." (See FAC ¶ 1.)  The drainage tubes, plaintiffs allege, "were designed in such a way that they are prone to become clogged with dirt, debris, leaves, and other naturally-occurring materials," and when clogged, the tubes "come loose or flood into the trunks." (See FAC ¶ 2.)  Plaintiffs allege that Sharma's vehicle incurred a "catastrophic electrical malfunction" when water accumulated around the electronic modules in the trunk (see FAC ¶¶ 11-12), and that Anderson "experienced difficulties with some of the car's electronic components, expressed as a failure to start," due to "pooling water" in the trunk of his vehicle (see FAC ¶ 19).  Plaintiffs also allege that although the asserted defect was covered by the warranties applicable to their vehicles, they each paid for the necessary repairs when BMW refused to cover the repair costs. (See FAC ¶ 12-13, 20-21, 24, 136-138.)  As relief, plaintiffs seek restitution, damages, a declaration as to their rights under the warranties, and injunctive relief, specifically, an order "requiring BMW to issue corrective actions including notification, recall, and repair of the Class Vehicles." (See FAC at 28:4-5.)

In its motion to dismiss, BMW argues plaintiffs lack standing to bring their claims, and, in the alternative, that plaintiffs have failed to state a claim upon which relief can be granted.  Because the issue of whether a plaintiff has standing is jurisdictional in nature, see Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011), the Court finds it appropriate to first address that issue before considering the other issues raised as to plaintiffs' claims.

"To satisfy Article III's standing requirements, a plaintiff must show (1) [he/she] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (internal quotation, citation, and alteration omitted).

As noted, plaintiffs allege the asserted defect is covered by the warranties applicable to their respective vehicles, that BMW declined to cover the costs incurred to repair plaintiffs' vehicles, and that plaintiffs themselves paid such costs. A "quintessential injury-in-fact" exists when plaintiffs have "spent money that, absent defendants' actions, they would not have spent." See id. at 1069. BMW argues that plaintiffs nonetheless lack standing to assert claims alleged on their own behalf. First, BMW contends, "[p]laintiffs fail to plead facts establishing they incurred repair costs that BMW [ ] was obligated to cover for free, whether under the [w]arranty that issued when their cars were new, or under the CPOW [Certified Pre-Owned Warranty]" (see Def.'s Mot. to Dismiss at 5:16-18), because, according to BMW, the new vehicle warranty had already expired and, in any event, neither the new vehicle warranty nor the CPOW cover design, as opposed to manufacturing, defects (see id. at 5:21-28). Second, BMW contends, "Anderson lacks Article III standing because he cannot prove, by a preponderance of the evidence, that clogged sunroof drains caused his alleged water leak and out-of-pocket expenses." (See id. at 6:16-18.) In essence, BMW argues that because plaintiffs will be unable to establish the merits of their claims, plaintiffs cannot establish their economic losses are fairly traceable to BMW.

BMW's arguments are misplaced. "[T]he threshold question of whether [a] plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim." Maya, 658 F.3d at 1068. A "standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction," cannot "be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true." See id. (internal quotation and citation omitted). Whether the language of plaintiffs' warranties requires BMW to cover the costs of the repairs incurred by plaintiffs and whether the asserted defect was causally linked to Anderson's inability to start his vehicle are issues going to the merits of plaintiffs' claims. In short, BMW fails to identify any basis to dismiss plaintiffs' individual claims on standing grounds.

BMW next argues that plaintiffs lack standing to assert claims on behalf of at least part of the putative class, specifically, persons who own or owned vehicles other than the

3

1 specific vehicle models owned by plaintiffs.  Where a class action complaint encompasses 2 both a product the plaintiff purchased and a product he did not, the plaintiff sufficiently has 3 standing to proceed with claims on behalf of class members who purchased the latter if 4 "there is sufficient similarity between the products purchased and not purchased."  See 5 Astiana v. Dreyer's Grand Ice Cream, Inc., 2012 WL 2990766 (N.D. Cal. July 20, 2012) 6 (collecting cases).  In that regard, plaintiffs allege that "all" of the makes and models 7 identified by plaintiffs as the "Class Vehicles" have the same "design defect."  (See FAC 8 ¶¶ 30-31; see also FAC ¶¶ 1-2.)  The Court finds such allegations sufficient to allege the 9 requisite similarity, and, consequently, suffice at the pleading stage to establish plaintiffs' 10 standing to assert claims on behalf of owners of vehicles other than those purchased by 11 plaintiffs.  See Carrico v. City and County of San Francisco, 656 F.3d 1002, 1006 (9th Cir. 12 2011) (holding, at pleading stage, court must "accept as true" plaintiff's factual allegations 13 for purposes of determining whether plaintiff has "establish[ed] standing").  Although BMW 14 contends plaintiffs will be unable to establish the truth of their allegations, in that, according 15 to BMW, "plaintiffs' own vehicles have unique structural designs, and unique features" (see 16 Def.'s Mot. at 7:7-10), BMW's argument is premature at this time and must await a later 17 stage of the proceedings.  See, e.g., Wal-mart Stores v. Dukes, 131 S. Ct. 2541, 2551 18 (2011) (setting forth, in context of motion for class certification, type of showing plaintiffs 19 must make to establish commonality).

20 In sum, the Court is not persuaded by the arguments made by BMW with respect to 21 standing.  Nonetheless, the Court finds it appropriate to raise sua sponte another question 22 concerning the issue of standing.  See B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 23 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional 24 issues such as standing.").

25 A plaintiff "bears the burden of demonstrating that he has standing for each type of 26 relief sought."  See Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009).  This rule 27 applies in all cases, irrespective of whether the plaintiff proceeds solely on his own behalf, 28 see, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 109-11 (1983) (holding that although

4

plaintiff's claim for damages based on use of chokehold during arrest "appear[ed] to meet all Article III requirements," plaintiff lacked standing to seek injunctive relief to prevent further use of chokehold because of the "speculative nature of his claim that he will again experience injury as the result of that practice even if continued"), or on behalf of a class, see, e.g., Nelsen v. King County, 895 F.2d 1248, 1249-50, 1254 (9th Cir. 1990) (holding that although plaintiffs could proceed with claims for damages based on injuries assertedly occurring at rehabilitation center, plaintiffs lacked standing to seek injunctive relief on behalf of class because plaintiffs failed to show "credible threat" they would return to rehabilitation center).

Here, as noted, plaintiffs allege BMW declined to cover the costs plaintiffs incurred to repair the asserted defect. In addition to seeking restitution and/or damages to remedy their economic losses, however, plaintiffs also seek injunctive relief in the form of an order requiring BMW to notify owners of the subject vehicles about the alleged defect and to offer to repair those vehicles at no cost to said persons.

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers, 555 U.S. at 493 (internal quotation and citation omitted). Here, plaintiffs fail to allege facts to meet the applicable standard. Specifically, plaintiffs fail to allege any facts to support a finding that the requested injunctive relief, if ordered by the Court, would redress an "actual and imminent" threat plaintiffs themselves face from BMW. See id.; see also, e.g., Nelsen, 895 F.2d at 1254 (holding plaintiff cannot seek injunctive relief on behalf of putative class in absence of showing plaintiff faces "credible threat of immediate future harm" from defendant). Indeed, plaintiffs allege their vehicles already have been repaired.

Accordingly, plaintiffs are hereby DIRECTED to show cause, in writing and no later than February 7, 2014, why their claim for injunctive relief should not be dismissed for lack of standing. Additionally, although the Court will defer ruling on the remaining arguments

5

in BMW's motion to dismiss pending resolution of the issue of standing, plaintiffs may file, no later than February 7, 2014 and limited to three pages in length, a response to the Statement of Recent Decision filed by BMW on November 25, 2013.

      Alternatively, if plaintiffs are of the view that they could allege additional facts to support a finding that plaintiffs have standing to seek injunctive relief, plaintiffs may respond to the instant order by filing, no later than February 7, 2014, a Second Amended Complaint that includes any such additional facts. If plaintiffs file a Second Amended Complaint to add such allegations, plaintiffs may, but are not required to, otherwise amend their existing claims.

      **IT IS SO ORDERED.**

Dated: January 15, 2014

MAXINE M. CHESNEY
United States District Judge