United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MONITA SHARMA, et al.,                    No. C-13-2274 MMC

12        Plaintiffs,                          **ORDER GRANTING DEFENDANT'S
                                               MOTION TO DISMISS; AFFORDING**
13   v.                                        **PLAINTIFFS LEAVE TO AMEND;
                                               DENYING AS MOOT DEFENDANT'S**
14   BMW OF NORTH AMERICA, LLC,,               **MOTION TO STRIKE CLASS
                                               ALLEGATIONS**
15        Defendant.

16   _____/

17        Before the Court are two motions, filed March 17, 2014, by defendant BMW of North

18   America, LLC ("BMW"):  (1) "Motion to Dismiss for Lack of Standing and Failure to State a

19   Claim"; and (2) "Motion to Strike Class Allegations."  Plaintiffs Monita Sharma ("Sharma")

20   and Eric Anderson ("Anderson") have filed opposition, to which BMW has replied.  Having

21   read and considered the papers filed in support of and in opposition to the motions, the

22   Court rules as follows.[1]

23                              **BACKGROUND**

24        The following factual allegations are contained in the operative complaint, the

25   Second Amended Class Action Complaint ("SAC").

26        According to plaintiffs, specified "makes and models" of BMWs were "designed so

27   that certain vital electrical components known as SDARS, RDC, and PDC Modules, are

28   _____

          [1]By order filed April 29, 2014, the Court took the matters under submission.

located in the lowest part of the vehicles' trunk," to wit, "the spare tire well under the trunk" (see SAC ¶ 1), and, further, were "designed so that drainage tubes used to drain water away from the vehicles' sun roofs are located directly next to the vital electrical equipment that is located in the bottom of the trunk" (see SAC ¶ 2).[2]  The drainage tubes, plaintiffs allege, were "designed in such a way that they are prone to become clogged with dirt, debris, leaves, and other naturally-occurring materials," and, when clogged, "come loose or leak into the trunks of the vehicles."  (See SAC ¶ 2.)  In short, plaintiffs assert, the "critical modules and electronic components" in the trunk are "prone to damage and failure due to water exposure," which exposure can occur either because "[w]ater can enter the trunk through normal use of the vehicle" or because of "clogs in the sunroof drains."  (See SAC ¶ 33.)

Plaintiffs allege that although BMW "knows of the vulnerability of water damaging the SDARS, RDC, and PDC Modules" (see SAC ¶ 3), it "has not informed its customers of the defects" (see id.), and "refuses to cover the costs of repairs under its warranty" (see SAC ¶ 4).

Both Sharma and Anderson purchased BMWs that assertedly have the subject defect, and, as set forth below, each plaintiff is alleged to have encountered problems resulting therefrom.

According to plaintiffs, Sharma purchased a "2008 BMW X5" in 2008.  (See SAC ¶ 6.)  Plaintiffs allege that in September 2012, after "an EDC warning light appeared" and Sharma was unable to open the "rear hatch of her vehicle," she took the vehicle to a "local BMW dealership" (see SAC ¶¶ 9, 10), which "found moisture around the electrical components located in the trunk and inspected the sun roof drains" (see SAC ¶ 10). Plaintiff further allege that thereafter, on or about January 15, 2013, Sharma was driving on a freeway, and "suddenly, without warning, power in her car completely shut down while

_____

[2]The subject "makes and models" are identified in the SAC as "[a]ll BMW-designed X5 series vehicles (from 1999 to 2008), X3 series vehicles (from 2003 to 2010), and 5 series vehicles (from 2004 to 2010)."  (See SAC ¶ 32.)

1    she was moving at highway speeds from 55 mph to 65 mph"; Sharma was able to drive her

2    vehicle "towards the shoulder of the highway" and had it towed to a BMW dealership.  (See

3    SAC ¶ 11.)  Plaintiffs allege the dealership "determined that the rear sunroof drains of

4    [Sharma's] vehicle were clogged and had caused the right and left pockets of the trunk

5    space to flood," which in turn caused a "catastrophic electrical malfunction that occurred

6    when water accumulated around the electronic modules in the trunk" (see SAC ¶ 12); the

7    dealership "drained the water out of . . . Sharma's trunk and replaced the corroded wiring,

8    but did not otherwise move the electronics in her trunk or undertake any attempts to make

9    them watertight" (see SAC ¶ 13).  According to plaintiffs, although Sharma asked BMW to

10   "cover the cost of draining her trunk and replacing the corroded wiring," BMW "refused and

11   continues to refuse to pay the amount she paid to repair the vehicle."  (See SAC ¶ 15.)

12        In March 2010, plaintiff Anderson purchased a "certified pre-owned 2007 BMW E60

13   530I."  (See SAC ¶ 16.)  Plaintiffs allege that, in 2012, while Anderson's vehicle was parked

14   outside in the rain, "water which should have drained off of the roof through the panoramic

15   sunroof's drain tubes wept into the car's trunk" (see SAC ¶ 19), which water "pool[ed] and

16   collect[ed]" around electrical components in the trunk (see SAC ¶ 20).  As a result, plaintiffs

17   allege, Anderson "experienced difficulties with some of the car's electronic components,

18   expressed as a failure to start."  (See SAC ¶ 21.)  According to plaintiffs, a BMW dealership

19   repaired the "problem" by "permanently sealing two of the four sunroof drain tubes," by "re-

20   locating the electronic components from the lowest point in the vehicle's trunk to a higher

21   point in the vehicle via the use of Velcro and wire ties," and by "drill[ing] drainage weep

22   holes in the floor pan of the trunk."  (See SAC ¶¶  21-22.)  Plaintiffs allege that BMW

23   "refuse[d]" Anderson's request to cover the cost of the repairs he paid.  (See SAC ¶¶ 23-

24   24.)

25        Based on the above, plaintiffs assert seven state law Claims for Relief, on their own

26   behalf and on behalf of a putative class consisting of "[a]ll persons in California who

27   currently own or lease, or who have owned or leased, any [of the subject BMW] vehicles."

28   (See SAC ¶ 69.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

In its motion to dismiss, BMW argues plaintiff Sharma lacks standing to seek injunctive relief, and, additionally, that plaintiffs have failed to state a claim upon which relief can be granted.  In its motion to strike, BMW argues that plaintiffs' class action allegations should be stricken on the ground that none of plaintiffs' claims are suitable for determination on a classwide basis.

**A. Motion to Dismiss**

**1. Standing**

Plaintiffs seek, <u>inter</u> <u>alia</u>, injunctive relief on behalf of plaintiff Sharma (<u>see</u> SAC, Prayer for Relief, ¶ B), specifically, an order "requiring BMW to issue corrective actions including notification, recall, and repair of the Class Vehicles, or the establishment of a fund or program to repair the Class Vehicles" (<u>see</u> SAC, Prayer for Relief, ¶ D).  BMW argues Sharma lacks standing to seek injunctive relief.

"To satisfy Article III's standing requirements, a plaintiff must show (1) [he/she] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1067 (9th Cir. 2011) (internal quotation, citation, and alteration omitted).

Plaintiffs, as noted, allege the asserted defect in Sharma's vehicle caused her vehicle to stop while she was driving at a high speed on a highway, and that the repairs the dealership performed did not correct the defect.  BMW does not argue that plaintiffs' allegations are insufficient to support a finding that Sharma has standing to seek injunctive relief.  Rather, BMW argues, plaintiffs cannot establish the truth of those allegations.

In particular, relying on notes apparently taken by service advisors at a dealership where Sharma took her vehicle on two occasions (<u>see</u> Yoshino Decl., filed March 17, 2014, Exs. A, B), BMW contends that plaintiffs cannot establish Sharma's vehicle stopped operating while she was driving it, and, further, that plaintiffs cannot establish any problem

4

1   with the electrical system in Sharma's vehicle was the result of a design defect as opposed

2   to Sharma's failure to maintain the sunroof drains.

3       BMW's arguments are misplaced.  "[T]he threshold question of whether [a] plaintiff

4   has standing (and the court has jurisdiction) is distinct from the merits of his claim."  Maya,

5   658 F.3d at 1068.  A "standing analysis, which prevents a claim from being adjudicated for

6   lack of jurisdiction," cannot "be used to disguise merits analysis, which determines whether

7   a claim is one for which relief can be granted if factually true."  See id. (internal quotation

8   and citation omitted).  Whether Sharma's vehicle stopped operating while she was driving it

9   and whether any vehicle failure was the result of a design defect are issues going to the

10  merits of Sharma's claims, not whether she has standing to seek injunctive relief.

11      Accordingly, BMW has failed to show Sharma lacks standing to pursue her claim for

12  injunctive relief.

13      **2.  Failure to State a Claim**

14      A dismissal for failure to state a claim can be based on the lack of a cognizable legal

15  theory or the absence of sufficient facts alleged under a cognizable legal theory.  See

16  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however,

17  "requires only 'a short and plain statement of the claim showing that the pleader is entitled

18  to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R.

19  Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss

20  does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's obligation to

21  provide the grounds of his entitlement to relief requires more than labels and conclusions,

22  and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal

23  quotation, citation, and alteration omitted).

24      In analyzing a motion to dismiss, a district court must accept as true all material

25  allegations in the complaint, and construe them in the light most favorable to the

26  nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

27  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

28  as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough

to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.  Courts

"are not bound to accept as true a legal conclusion couched as a factual allegation."  See

Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

Here, as noted, the FAC contains seven Claims for Relief, which the Court next

addresses in the sequence in which they are discussed in the parties' respective

memoranda of points and authorities.

### a.  Seventh Claim for Relief: Breach of Express Warranty

In the Seventh Claim, titled "Breach of Express Warranty," plaintiffs allege their

respective vehicles were covered by one or more warranties under which BMW warrants

"against defects in materials or workmanship."  (See SAC ¶ 43.)

Sharma's vehicle is alleged to have been covered by a "New SAV Limited Warranty

– 2008 X5" (see Def.'s Req. for Judicial Notice Ex. A), and Anderson's vehicle is alleged to

have been covered by a "New Vehicle Limited Warranty – 2007 Models (see id. Ex. B).[3]

Under both new vehicle warranties, BMW, for a period of 48 months or 50,000 miles,

whichever occurs first, warrants "against defects in materials or workmanship to the first

retail purchaser, and each subsequent purchaser."  (See Def.'s Req. for Judicial Notice Ex.

A at 29, Ex. B at 32).  Both vehicles are alleged to have been covered by a "Certified Pre-

Owned Warranty" ("CPOW"), which warranty provides coverage upon expiration of the new

vehicle warranty and thereafter for a period of two years or 50,000 miles, whichever occurs

first (see id. Ex. C, second page);[4] under the CPOW, BMW likewise warrants "against

---

[3]BMW'S request, unopposed by plaintiffs, that the Court take judicial notice of the
contents of the new vehicle warranties is hereby GRANTED.  See Branch v. Tunnell, 14
F.3d 449, 454 (9th Cir. 1994) (holding court may take judicial notice of documents whose
contents are alleged in complaint and whose authenticity no party questions).

[4]BMW'S request that the Court take judicial notice of the contents of the CPOW is
hereby GRANTED.  Although each plaintiff denies having received a copy of the CPOW
submitted by BMW, such denial does not preclude judicial notice of its content.  See Davis
v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1161 (9th Cir. 2012) (holding where "party
opposing incorporation by reference argues only that he did not review or have access to
the proffered copies, this does not amount to a challenge to those documents'
authenticity").

1    defects in materials or workmanship" (see Def.'s Req. for Judicial Notice Ex. C, third page;

2    see also SAC ¶ 43 (alleging CPOW "provides protection from defects in materials or

3    workmanship").)

4         Plaintiffs allege BMW breached the warranties by failing to cover the costs incurred

5    by plaintiffs to repair their vehicles.  BMW argues the language in the warranties forecloses

6    plaintiffs' claim.

7         As noted, under each of the subject warranties, BMW warranted against defects in

8    "materials or workmanship."  Under California law, a warranty that provides protection

9    against "defects in materials or workmanship" does not cover design defects.  See Moss v.

10   Smith, 181 Cal. 519, 520 (1919) (affirming judgment for plaintiff on breach of warranty

11   claim, where warranty covered "any part that is defective in material or workmanship" and

12   evidence supported trial court's "conclusion that the defective operation of the car was due,

13   not to the imperfect design of the engine, but to faulty workmanship in its construction");

14   Paduano v. American Honda Motor Co., 169 Cal. App. 4th 1453, 1467-68 (2009) (affirming

15   summary judgment for defendant on breach of warranty claim, where plaintiff failed to offer

16   evidence to show his "low gas mileage [was] the result of a mechanical defect"); see also

17   Troup v. Toyota Motors Corp., 545 Fed. Appx. 668, 668-69 (9th Cir. 2013) (noting, "[i]n

18   California, express warranties covering defects in materials and workmanship exclude

19   defects in design").[5]

20        A "design defect" exists "when the product is built in accordance with its intended

21   specifications, but the design itself is inherently defective."  See McCabe v. American

22   Honda Motor Co., 100 Cal. App. 4th 1111, 1120 (2002).  By contrast, a "manufacturing

23   defect exists when an item is produced in a substandard condition," i.e., where a

24   manufacturer "fail[s] to comply with its own design specifications," and is "often

25

26        [5]Plaintiffs' reliance on Marsikian v. Mercedes Benz USA, LLC, 2009 WL 8379784
27   (C.D. Cal. May 4, 2009), is unavailing.  Although the plaintiffs therein alleged their vehicles
     had a "design defect," and the district court denied a motion to dismiss their breach of
28   express warranty claim, the defendant, as the court noted, had "not argued" design defects
     fall outside of materials and workmanship provisions.  See id. at *4.

1    demonstrated by showing the product performed differently from other ostensibly identical

2    items of the same product line."  See id. (internal citation omitted).

3         BMW argues the alleged defect identified in the SAC is one of design.  Plaintiffs, by

4    contrast, argue it is premature at the pleading stage to determine whether the alleged

5    defect is one of design or of manufacturing.

6         According to the SAC, "the Class Vehicles were designed in such a way that makes

7    them unsafe and susceptible to flooding."  (See SAC ¶ 82.)  More specifically, the defect

8    challenged by plaintiffs is that "critical modules and electronic components are located in

9    the lowest point of the trunk"; because of said location, plaintiffs allege, the subject modules

10   and components are "prone to damage and failure due to water exposure," as "[w]ater can

11   enter the trunk through normal use of the vehicle and [through] clogs in the sunroof drains."

12   (See SAC ¶ 33.)  Consistent therewith and with plaintiffs' allegations that said "defect"

13   exists in "all Class Vehicles" (see SAC ¶¶ 32-33), and that "BMW decided" to place the

14   electrical components in said location (see SAC ¶ 1), the SAC repeatedly refers to the

15   alleged defect as one of "design" (see SAC ¶¶ 1, 2, 14, 20, 23, 52, 54, 55, 57, 58, 59, 60,

16   72, 73.f, 73.g, 75, 82, 92).

17        Nonetheless, plaintiffs argue, resolution of whether the alleged defect they have

18   identified is one of design or manufacturing should not be addressed at the pleading stage.

19   The Court disagrees.  Although, as plaintiffs contend, it may be appropriate to defer such

20   determination where, "at the pleading stage[,] . . . sufficient facts are alleged to assert both"

21   a design defect and a manufacturing defect, see Alin v. American Honda Motor Co., 2010

22   WL 1372308, at *6 (D. N.J. March 31, 2010), here, the SAC includes no facts to support a

23   theory that, at the time plaintiff's respective vehicles were manufactured, BMW did not

24   make them "in accordance with [BMW's] intended specifications."  See McCabe, 100 Cal.

25   App. 4th at 1120.

26        Accordingly, the Seventh Claim is subject to dismissal.

27   //

28   //

                                        8

1          **b.  Second Claim for Relief:  Consumers Legal Remedies Act ("CLRA")**

2          In the Second Claim, plaintiffs allege violations of the CLRA.

3          The CLRA, Cal. Civ. Code §§ 1750-1784, prohibits "unfair or deceptive acts or

4   practices undertaken by any person in a transaction intended to result or which results in

5   the sale or lease of goods or services to any consumer."  See Cal. Civ. Code § 1770(a).  In

6   the SAC, plaintiffs allege BMW engaged in the following prohibited practices identified in

7   the CLRA:  "[r]epresenting that goods . . . have . . . characteristics [or] . . . benefits . . .

8   which they do not have," see Cal. Civ. Code § 1770(a)(5); "[r]epresenting that goods . . .

9   are of a particular standard, quality, or grade . . . if they are of another," see Cal. Civ. Code

10  § 1770(a)(7), and "[a]dvertising goods . . . with intent not to sell them as advertised," see

11  Cal. Civ. Code § 1770(a)(9).  According to plaintiffs, BMW engaged in those practices by

12  "actively conceal[ing] and fail[ing] to disclose" to plaintiffs that they "were entering into a

13  sale for a vehicle prone to flooding and damage due to defectively-placed electronic

14  component parts, as well as defectively-designed sunroof drains."  (See SAC ¶¶ 91-92.)

15         Where, as here, a plaintiff bases a CLRA claim on a failure to disclose a product

16  defect, the plaintiff must allege the defect poses "an unreasonable safety hazard," see

17  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1142-43 (9th Cir. 2012), and that the

18  defendant "was aware of [the] defect at the time of sale," see id. at 1145.  BMW argues that

19  plaintiffs have failed to allege sufficient facts to support a finding that the defect poses an

20  unreasonable safety hazard and that BMW was aware of any such defect.

21         With respect to the issue of safety, the Court finds plaintiffs have pleaded sufficient

22  facts to support a finding that the alleged defect poses an unreasonable safety hazard.

23  Specifically, plaintiffs allege that the power in Sharma's vehicle "suddenly, without warning,

24  . . . completely shut down while she was moving at highway speeds from 55 mph to 65

25  mph" (see SAC ¶ 11) and that the "steering" on a Class Vehicle owned by another person

26  "locked" as the driver was about to enter a turnpike (see SAC ¶ 47).

27         With respect to the issue of BMW's knowledge, however, the Court finds plaintiffs'

28  allegations deficient.  Plaintiffs allege BMW "knew" of the subject defect in light of

9

"numerous consumer complaints and repair orders."  (<u>See</u> SAC ¶ 53.)  Even assuming

consumer complaints could be sufficient to provide a manufacturer with notice of a defect,

however, <u>see</u> <u>Wilson</u>, 668 F.3d at 1147 (observing "[s]ome courts have expressed doubt

that customer complaints in and of themselves adequately support an inference that a

manufacturer was aware of a defect"), plaintiffs fail to allege any facts suggesting such

complaints were made prior to the dates on which plaintiffs purchased their respective

vehicles, <u>see</u> <u>id.</u> at 1148 (holding, where plaintiffs relied on fourteen customer complaints

to establish notice, plaintiffs' allegations failed to "support an inference that [defendant]

was aware of the defect at the time it sold the [subject products]," in that twelve complaints

were "undated" and remaining two were made after dates on which plaintiffs made

purchases).

        Accordingly, the Second Claim is subject to dismissal.

### c.  Third Claim for Relief:  Bus. & Prof. Code § 17200

        In the Third Claim, plaintiffs allege violations of § 17200 of the Business and

Professions Code.

        Plaintiffs' § 17200 claim is based in part on the same allegations as those that

support their Second Claim, specifically, that BMW failed to disclose to plaintiffs that the

asserted design defect posed a safety risk.  (<u>See</u> SAC ¶ 97.)   Consequently, to the extent

the Third Claim is derivative of the Second Claim, the claim is deficient for the reason

stated above with respect to the Second Claim, specifically, a failure to allege sufficient

facts to support a finding that BMW knew of the asserted defect at the time Sharma and

Anderson bought their respective vehicles.

        The § 17200 claim is also based on an allegation that BMW's failure to disclose the

defect to plaintiffs was "fraudulent."  (<u>See</u> SAC ¶ 99.)  To the extent the Third Claim is

based on such a theory, the claim likewise is deficient, given that such a claim, like a CLRA

claim, requires a showing that the defendant "was aware of the alleged defect at the time

the [products] were sold."  <u>See</u> <u>Wilson</u>, 668 F.3d at 1145-46.

        Accordingly, the Third Claim is subject to dismissal.

10

1

### d. Fourth Claim for Relief:  Negligence

2      In the Fourth Claim, titled "Negligence," plaintiffs allege BMW had a "duty to

3   disclose" the "safety risks posed by the Class Vehicles," but failed to do so, and had a "duty

4   not to put the defective Class Vehicles on the market, or to recall the defective Class

5   Vehicles," but failed to comply with such duty.  (See SAC ¶¶ 109, 110, 112.)  BMW argues

6   the Fourth Claim is subject to dismissal in light of California's economic loss rule.

7      Under California law, "[t]he economic loss rule requires a purchaser to recover in

8   contract for purely economic loss due to disappointed expectations, unless he can

9   demonstrate harm above and beyond a broken contractual promise."  Robinson Helicopter

10  Corp. v. Dana Corp., 34 Cal. 4th 979, 988 (2005).  "Economic loss consists of damages for

11  inadequate value, costs of repair and replacement of the defective product or consequent

12  loss of profits – without any claim of personal injury or damages to other property."  Id. at

13  988-89 (internal quotation and citation omitted).  Under the economic loss rule, where a

14  plaintiff alleges a claim for negligence based on a defective product, "a manufacturer's

15  liability is limited to damages for physical injuries and there is no recovery for economic

16  loss alone."  See Seely v. White Motor Co., 63 Cal. 2d 9, 18 (1965); see also East River

17  Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 867, 871, 875-76 (1986)

18  (adopting California's economic loss rule for federal maritime claims; holding where plaintiff

19  alleged defective component located within turbine "damaged only the turbine," plaintiff

20  could not proceed with either strict products liability or negligence claims).

21      Here, plaintiffs allege that, as a result of the assertedly defective design of their

22  vehicles, they each incurred repair costs (see SAC ¶¶ 10, 15, 23), and may incur such

23  repair costs in the future (see SAC ¶ 63 (alleging plaintiffs "have suffered actual damages

24  in that the electronic component parts located in the Class Vehicles' trunks are

25  experiencing continuous and progressive failure problems")).  Plaintiffs, however, do not

26  allege they incurred any physical injury or damage to property other than to their vehicles,

27  and, consequently, fail to allege sufficient facts to support a negligence claim.  See, e.g.,

28  Callaghan v. BMW, 2014 WL 1340085, at *1, *6 (N.D. Cal. April 2, 2014) (dismissing

1  negligence claim in light of economic loss rule, where plaintiffs alleged defendant "failed to

2  disclose a material safety defect" in their vehicles but alleged no damage other than

3  "expensive repairs" and "loss of value in their vehicles").

4          Accordingly, the Fourth Claim is subject to dismissal.

5                    **e.  Fifth Claim for Relief:  Negligent Failure to Recall/Retrofit**

6          The Fifth Claim alleges a negligence claim based on BMW's alleged "fail[ure] to

7  recall Class Vehicles or warn of the dangers of the Class Vehicles despite a duty to do so."

8  (See SAC ¶ 126.)

9          For the reasons stated above with respect to the Fourth Claim, the Fifth Claim is

10 subject to dismissal in light of the economic loss rule.  Moreover, as pleaded, the Fifth

11 Claim is duplicative of the Fourth Claim.

12                    **f.  Sixth Claim for Relief:  Injunctive Relief**

13         In the Sixth Claim, titled "Injunctive Relief," plaintiff Sharma seeks injunctive relief in

14 the form of "corrective action to avoid the safety risk the Class Vehicles pose."  (See SAC

15 ¶ 137.)

16         BMW argues the Sixth Claim is subject to dismissal because "injunctive relief" is not

17 a claim, but, rather, a remedy.  The Court agrees.  See County of Del Norte v. City of

18 Crescent City, 71 Cal. App. 4th 965, 973 (1999) (holding "[a] permanent injunction is an

19 equitable remedy, not a cause of action, and thus it is attendant to an underlying cause of

20 action"); see also Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 709 (N.D. Cal.

21 2009) (dismissing cause of action for injunctive relief on ground it does not state

22 independent claim).[6]

23         Accordingly, the Sixth Claim is subject to dismissal.

24 //

25 //

26 _____

27         [6]Although, under some circumstances, a plaintiff may be entitled to injunctive relief
   as a remedy for a violation of the CLRA, see Cal. Civ. Code § 1780(a)(2), or for a violation
28 of § 17200, see Cal. Bus. & Prof. Code § 17203, here, as discussed above, plaintiffs' CLRA
   and § 17200 claims are subject to dismissal.

                                                    12

1
### g.  First Claim for Relief:  Declaratory Relief

2      In the First Claim, titled "Declaratory Relief," plaintiffs seek a declaration in their

3 favor as to the parties' asserted controversy "concerning the existence of defects in the

4 Class Vehicles and whether the repair of such defects should be covered under the Class

5 Vehicle's [w]arranty."  (See SAC ¶¶ 80, 83.)

6      For the reasons stated above with respect to the Seventh Claim, plaintiffs are not

7 entitled to a declaration that the asserted defects are covered under the warranties

8 applicable to their respective vehicles.  Moreover, the First Claim identifies no controversy

9 other than that presented by plaintiffs' substantive claims for relief, and, consequently, is

10 subject to dismissal for such additional reason.  See Swartz v. KPMG LLP, 476 F.3d 756,

11 765-66 (9th Cir. 2007) (holding "[t]o the extent [plaintiff] seeks a declaration of defendants'

12 liability for damages sought for his other causes of action, the claim is merely duplicative

13 and [is] properly dismissed").  Finally, even if any of plaintiffs' claims had been sufficiently

14 alleged, the issue of whether any such claim may be brought on behalf of a class is

15 determined in the context of a motion to certify a class, see Fed. R. Civ. P. 23, and not a

16 claim for declaratory relief.

17       Accordingly, the First Claim is subject to dismissal.

18 ### B.  Motion to Strike

19      As noted, BMW seeks an order striking from the SAC allegations pertaining to

20 plaintiffs' assertion that their claims may be brought on behalf of a class.

21      As discussed above, the SAC will be dismissed for failure to state a claim.

22      Accordingly, the motion to strike will be denied as moot.

23 ### CONCLUSION

24 For the reasons stated above,

25      1.  BMW's motion to dismiss is hereby GRANTED, and the SAC is hereby

26 DISMISSED for failure to state a claim.

27      2.  BMW's motion to strike is hereby DENIED as moot.

28 //

1       3.  If plaintiffs wish to file a Third Amended Complaint for purposes of curing any or

all of the deficiencies identified above with respect to the Second, Third, Fourth, Fifth,

and/or Seventh Claims for Relief, any such Third Amended Complaint shall be filed no later

than July 3, 2014.  Plaintiffs may not, however, add new causes of action, new plaintiffs, or

new defendants without obtaining leave of court.  See Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED.**

Dated:  June 19, 2014

MAXINE M. CHESNEY
United States District Judge

14