William A. Kershaw (State Bar No. 057486)
Email: wkershaw@kcrlegal.com
Stuart C. Talley (State Bar No. 180374)
Email: stalley@kcrlegal.com
KERSHAW, CUTTER & RATINOFF LLP
401 Watt Avenue
Sacramento, California 95864
Telephone:    (916) 448-9800
Facsimile:    (916) 669-4499

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MONITA SHARMA and ERIC ANDERSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>BMW of NORTH AMERICA, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No. 3:13-cv-02274-MMC<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Monita Sharma and Eric Anderson ("Plaintiffs") bring this class action on behalf of themselves and all similarly situated California residents who purchased or leased certain defective BMW vehicles sold in the United States by Defendant BMW of North America, LLC ("BMW" or "Defendant").

## NATURE OF THE ACTION

1.     Throughout the Class Period, BMW designed, manufactured, distributed, sold, and leased various makes and models of BMW vehicles ("Class Vehicles") that contain a serious design defect that significantly impacts both the safety and value of its vehicles. Specifically,

numerous models of BMW vehicles manufactured during the Class Period were designed so that certain vital electrical components known as SDARS, RDC, and PDC Modules, are located in the lowest part of the vehicles' trunk. These Modules are responsible for the safe and effective operation of the vehicle and when they are damaged, can cause the vehicle to lose power while in operation. Because BMW decided to place these vital electrical components in what is essentially the lowest part of the vehicle (the spare tire well under the trunk), they are especially prone to water damage that can be caused through the normal and ordinary use of the vehicle. When this water damage occurs, the vehicles become inoperable and pose a serious safety risk to those who experience this problem. Although these components are highly susceptible to water damage, BMW provides no warnings or advisories to BMW owners about the location of this vital equipment or the importance of keeping the vehicle's trunk compartment free of liquids.

2.     To make matters worse, the Class Vehicles were also designed so that drainage tubes used to drain water away from the vehicles' sun roofs are located directly next to the vital electrical equipment that is located in the bottom of the trunk. Unfortunately, these sunroof drains were designed in such a way that they are prone to become clogged with dirt, debris, leaves, and other naturally-occurring materials. When these tubes become clogged, they come loose or leak into the trunks of the vehicles. These leaks, which eventually flood the trunks of the vehicles, cause the vital electronic components contained at the bottom of the vehicles' trunks to short—shutting off certain components of the automobile necessary for driving and creating a serious safety risk.

3.     BMW knew or should have known of the cars' defects via numerous complaints filed with the National Highway Traffic Safety Administration ("NHTSA"), detailing the damage caused to the Class Vehicles because of the placement of the vulnerable electronics in the bottom of the cargo areas.

4.     BMW demonstrated its knowledge of the Class Vehicles' defects via a secret service bulletin dated August 2009, which replaced an earlier February 2009 bulletin, to various authorized service providers. (August 2009 SIB 61 13 06, General Electrical Systems, attached hereto as Exhibit 1.) In this service bulletin, BMW repair facilities are instructed to replace water

damaged Modules and move them to another, less vulnerable, location of the trunk. The bulletin also instructs repair facilities to place a permanent warning placard in the trunk that specifically warns owners that there is vital electrical equipment in the trunk and to avoid allowing liquids into this area of the vehicle. The service providers are also instructed to verbally notify Class members "of the label and the fact that liquids should not be present on or under the trunk insulation, due to the sensitive nature of the electronic control units located in the spare tire well."

5.     Additionally, BMW knew or should have known of the defect in the Class Vehicles had BMW performed adequate testing and analysis of the design of the Class Vehicles.

6.     Despite that BMW knows of the vulnerability of water damaging the SDARS, RDC, and PDC Modules and the grave safety risks this creates, BMW has not informed its customers of the defects or issued warnings about the defects. Instead, BMW actively conceals the safety defect, and instead blames the consumer for improper maintenance of the Class Vehicle when it exhibits symptoms of the defect.

7.     Despite the obvious defect at issue in this case, BMW refuses to cover the cost of repairs. Instead, BMW places the fault on the consumer for improper maintenance of the vehicle. It does this even though owner's manuals and the written maintenance program provide no mention of the electronic equipment in the trunk or what steps should be taken to avoid damaging this equipment.

8.     The above-described conduct is a breach of the implied warranty of merchantability and violates both the California Consumer Legal Remedies Act and the California Unfair Competition law. With this action, Plaintiffs seek 1) to obtain a refund for all consumers who incurred out-of-pocket expenses associated with the repair and/or replacement of water damaged SDARS, PDC, or RDC Modules, 2) obtain damages associated with the loss of the benefit of the bargain, and/or 3) obtain an injunction ordering BMW to notify Class members about the defect at issue and to repair the defect by moving all SDARS, RDC, and PDC Modules pursuant to its own internal service bulletin.

## PARTIES

**A.     Plaintiff, Monita Sharma**

9.     Plaintiff Monita Sharma is a citizen of the State of California and a resident of Berkeley, California.   Ms. Sharma and her husband purchased a 2008 BMW X5 from Weatherford BMW in Berkeley, California in or around May 2009.   The vehicle was sold, distributed, advertised, marketed, and warranted by the Defendant, and bears the Vehicle Identification Number 5UXFE43548L036079.   The vehicle was used primarily for personal, non-commercial purposes.

10.     Before acquiring her vehicle, Ms. Sharma reviewed and relied on BMW's various marketing and advertising materials, including material on BMW's official website.

11.     In late-2012 and early-2013, Ms. Sharma began to experience a series of electrical problems related to water infiltration and accumulation in or around the electronic components located in the trunk of her vehicle.

12.     For example, in September 2012, an EDC warning light appeared and the rear hatch of her vehicle would not open after depressing the rear hatch button in her vehicle nor through the use of her key fob.

13.     After taking her car to the local BMW dealership to address these electrical issues, the dealership found moisture around the electronic modules located in the trunk and inspected the sun roof drains in her car.   Ms. Sharma paid close to $600 to the BMW dealership to inspect, diagnose and address these problems.

14.     Although Ms. Sharma paid the dealership to address issues she was having with her electrical system, the problems returned, and have demonstrated that they will continue to return.   On or around January 15, 2013, Ms. Sharma was traveling on the freeway in her BMW vehicle with her two small children in the car.   While driving at freeway speeds in traffic, suddenly, without warning, power in her car completely shut down while she was moving at highway speeds from 55 mph to 65 mph.   Fortunately for Ms. Sharma and her children, the vehicles traveling around her were able to avoid a collision as she quickly weaved in and around traffic in an attempt to navigate her car towards the shoulder of the highway.   She was successful

-4-

and was able to secure a tow truck to transport her car to the nearest BMW dealership. Ms. Sharma and her children could have been involved in a serious accident. It took Ms. Sharma several days to regain her composure following this incident and she is terrified that her car could fail again at any time while driving, particularly with her children in the car.

15. Upon inspection, the BMW dealership determined that the January 15, 2013 incident was caused by a catastrophic electrical malfunction that occurred when water accumulated around the electronic modules in the trunk of her vehicle, again. The dealership determined that the rear sunroof drains of her vehicle were clogged and had caused the right and left pockets of the trunk space to flood. Upon inspection, the dealership found that the electronic modules in the trunk of Ms. Sharma's car were literally sitting in water.

16. The BMW dealership drained the water out of Ms. Sharma's trunk and replaced the corroded wiring, but did not otherwise move the electronics in her trunk or undertake any attempts to make them watertight. The defect persists in her vehicle. These ineffective repairs provide for a substantial likelihood that Ms. Sharma's vehicle will fail, again, and have not eliminated the defect from her vehicle.

17. Like Ms. Sharma, other absent class members have experienced problems related to the defective design of the Class Vehicles, and will continue to experience problems related to the Class Vehicles' defects as BMW has not initiated an effective repair initiative to repair the defects.

18. Ms. Sharma asked BMW to cover the cost of draining her trunk and replacing the corroded wiring, but BMW refused and continues to refuse to pay the amount she paid to repair the vehicle.

**B.    Plaintiff, Eric Anderson**

19. Plaintiff Eric Anderson is a citizen of the State of California and a resident of Pasadena, California. On March 12, 2010, Plaintiff purchased a certified pre-owned 2007 BMW E60 530I automobile with a panoramic sunroof from Crevier BMW of Santa Ana, California, designed, manufactured, marketed, distributed, and sold by BMW.

20. Mr. Anderson acquired and used his vehicle primarily for personal, family, or

-5-

household purposes.  The vehicle was sold, distributed, advertised, marketed, and warranted by the Defendant, and bears the Vehicle Identification Number WBANE73597CM55703.

21.     Before acquiring his vehicle, Mr. Anderson reviewed and relied on BMW's various marketing and advertising materials, including material on BMW's official website.

22.     Two years after purchasing the vehicle, Mr. Anderson parked his car in front of his home, as was his normal practice.  After several hours, it began to rain, and water which should have drained off of the roof through the panoramic sunroof's drain tubes wept into the car's trunk because of a common defect in the design of the sunroof drain pipes.

23.     BMW's defective design caused water to pool and collect around the SDARS, RDC, and PDC Modules, which BMW chose to locate in the lowest point of the automobile's trunk.

24.     Mr. Anderson experienced difficulties with some of the car's electronic components, expressed as a failure to start.  He took his automobile to BMW of Monrovia in Monrovia, California, where they informed him of the pooling water in his trunk, and that they would repair the problem, but refused to cover the cost of the work under the certified, pre-owned warranty.[1]

25.     The repair to the problem consisted of permanently sealing two of the four sunroof drain tubes, and re-locating the electronic components from the lowest point in the vehicle's trunk to a higher point in the vehicle via the use of Velcro and wire ties.  This was done in accordance with a BMW service bulletin.  BMW also drilled drainage weep holes in the floor pan of the trunk.

26.     Mr. Anderson paid $2,206.28 for this repair.  Although the repair was performed specifically to address a defect that was part of the design of the vehicle and covered as an electrical problem under BMW's Certified Pre-Owned Warranty, BMW refused to cover the repair under its warranty.

_____

[1] All certified, pre-owned BMW vehicles come with a 6-year/100,000-mile protection plan and are "thoroughly inspected by a BMW-trained technician."  *See* BMW Certified Pre-Owned Information, http://www.bmwusa.com/standard/content/cpo/default.aspx (last accessed Nov. 10, 2012).

27. Mr. Anderson contacted BMW of North America, LLC, and was informed that, despite the fact that his car was covered under the Certified Pre-Owned 6-year/100,000-mile Warranty, BMW would not cover nor issue him a refund for the repairs under the warranty.

28. Instead of acknowledging the defect, BMW informed Mr. Anderson that he needed to regularly clean and service the sunroof drains of his car and avoid having fluids enter the trunk; however, his user manual contains no information on this recommended "maintenance."

29. Mr. Anderson has since asked BMW to reconsider their position and cover the cost of the repairs to his car, performed pursuant to BMW's service bulletin. BMW continues to refuse his request.

**C. Defendant**

30. Defendant BMW of North America, LLC, is a corporation organized and existing under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California.

31. At all times relevant herein, BMW was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in San Francisco and Alameda Counties, California, and throughout the United States of America.

**JURISDICTION AND VENUE**

32. The Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act ("CAFA"). Plaintiffs and many other members of the putative Class are residents and citizens of states different from the home state of Defendant. More specifically, Plaintiffs and many Class members are California residents whereas Defendant is a resident of Delaware. Plaintiffs are informed and believe, and based thereon allege, that the amount in controversy in this case, exclusive of interest and costs, exceeds $5,000,000.

33. Venue is proper pursuant to 28 U.S.C. § 1391 in that Plaintiff Monita Sharma resides in this judicial district, purchased her BMW vehicle in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. In addition, Defendant BMW does substantial business in this judicial district, has received substantial benefit

from doing business in this judicial district, and has knowingly engaged in activities directed at consumers in this judicial district. Furthermore, a significant number of Defendant's customers are California residents, and the wrongful acts alleged herein have affected members of the putative Class throughout California. California has a significant contact or aggregation of contacts to the claims at issue herein in that BMW promotes, markets, and sells the vehicles at issue in California. Defendant BMW is subject to personal jurisdiction in the State of California and in this judicial district.

**INTRADISTRICT ASSIGNMENT**

34. Pursuant to Local Rules 3-5(b) and 3-2(d), assignment to the San Francisco Division or Oakland Division are proper because Plaintiff Monita Sharma resides in Contra Costa County and a substantial part of the events or omissions giving rise to the claims occurred in Contra Costa and Alameda Counties.

**FACTUAL ALLEGATIONS**

**A.      The Defect**

35. All BMW-designed X5 series vehicles (from 1999 to 2008), X3 series vehicles (from 2003 to 2010), and 5 series vehicles (from 2004 to 2010) (the "Class Vehicles") are similarly equipped with SDARS, RDC, and PDC Modules, among other modules and control units. These components control critical and important aspects of the vehicle and must operate properly in order for the vehicles to run. Additionally, all Class Vehicles come equipped with sunroofs containing four drain tubes, two of which are in close proximity to modules, including the SDARS, RDC, and PDC Modules. These drain tubes are prone to clogging and leaking within the body of the car.

36. In all of the Class Vehicles, critical modules and electronic components are located in the lowest point of the trunk where they are prone to damage and failure due to water exposure. Water can enter the trunk through normal use of the vehicle and clogs in the sunroof drains.

**B.      BMW's Owners Manuals**

37. Every BMW vehicle owned or leased by Class members comes with an owner's manual. The purpose of the manual is to provide owners with "important data and instructions

-8-

intended to assist [Class members] in gaining maximum use and satisfaction from [their] BMW's unique range of technical features." The manual also claims that it "contains information on maintenance designed to enhance operating safety and contribute to maintaining the value of your BMW throughout an extended service life." The manual is expressly made part of the Warranty for the vehicle. The manual is also described by BMW as "an important component of your vehicle" that should be read thoroughly by all BMW owners. At all times Plaintiffs and Class members relied on BMW to provide complete and accurate information about the operation and maintenance of the Class Vehicles to avoid damage to the vehicles and ensure that it is operated safely.

38. In all of the Owner's Manuals provided to Class members, BMW provides numerous recommendations, warnings, and precautions that Class members should heed when operating and/or using their vehicles. To highlight particular issues, the manuals use specific warning symbols to show "precautions that must be followed precisely in order to avoid the possibility of . . . serious damage to the vehicle."

39. Throughout the Owner's Manuals provided with the Class Vehicles, BMW provides page after page of detailed information concerning the vehicle's trunk, how it should be opened and what steps can be taken to avoid damaging the trunk. For example, BMW warns Class members that when they open their trunk lid it "pivots back and up." Therefore, owners should "make sure that adequate clearance is available before opening the trunk." In fact, the owner's manual repeatedly warns consumers to make sure they do not close the trunk lid on their hands.

40. Despite these numerous warnings of obvious dangers, nowhere in the owner's manuals provided to Class members, does BMW tell consumers to avoid spilling liquids in the trunk or that located at the bottom of the trunk compartment is vital electrical equipment that will be ruined, malfunction, and fail if water enters the trunk.

41. Additionally, the owner's manual provided with all Class Vehicles contains 3 full pages of detailed instructions concerning how to safely operate and maintain the vehicle's sun roof. Again, the manual provides numerous warnings of obvious dangers such as telling owners

to avoid shutting the roof on their hands.  Despite this, the manual says nothing about the drainage tubes, the fact that they are prone to clog, or that if they do become clogged this can lead to dangerous, catastrophic, and expensive damage to the vehicle's vital electronic equipment.

## C.     BMW's Maintenance Program

42.     In addition to providing Class members with Owner's Manuals that supposedly provide owners with complete and accurate information needed to properly maintain class vehicles, BMW also includes a written Maintenance Program with all Class Vehicles.  According to BMW, the Maintenance Program was designed with the following objectives:  "to maximize vehicle safety, reliability and resale value by minimizing breakdowns resulting from wear and minimizing cost."  BMW describes the Maintenance Program provided with Class Vehicles as a "benefit designed to help reduce the cost of ownership" and that following its maintenance recommendations will "help [Class members] maximize [their] satisfaction with [their] BMW, its longevity, and resale value."

43.     The written Maintenance Program provided with each Class Vehicle provides a long list of things that Class members must do to their vehicles on a regular basis to maximize its "longevity and resale value."  This list includes maintenance such as changing the oil, checking the brake pads, and changing vital fluids.  The Program also provides a long list of inspections that should be performed to ensure that all aspects of the vehicles are operating properly.  Those inspections include visual inspections of the headlights, flashers, seatbelts, windshield wipers, review mirrors, tires, etc.

44.     Despite providing numerous details concerning how Class Vehicles should be maintained in order to ensure their longevity and resale value, nowhere in the written Maintenance Program does BMW warn consumers that critical electronic equipment in the vehicle is highly vulnerable to water damage or that the vehicles' sun roof drainage tubes can be easily clogged and lead to the damage of this vital equipment.  In fact, nowhere in the maintenance program does BMW advise consumers about the existence of the drainage tubes, that they can become easily clogged with debris, or that they should be cleaned on a regular basis.  As a result, all BMW owners are put at extreme risk of serious injury and/or damage to their

-10-

1   vehicles.

2   **D.**      **BMW's Warranty**

3          45.      All Class Vehicles come with a New Vehicle Limited Warranty, extended limited

4   warranty or Certified Pre-Owned Warranty (collectively, "BMW Warranty").

5          46.      Under the BMW Warranty, BMW warrants all class vehicles "against defects in

6   materials or workmanship." Vehicles that are found to have a defect will be repaired "without

7   charge for parts or labor." BMW's Certified Pre-Owned Warranty also provides protection from

8   defects in materials or workmanship and states that "[t]his broad coverage includes the following

9   parts and systems . . . Electrical." The New Vehicle Limited Warranty expressly excludes

10   damage to the vehicles caused by "lack of or improper maintenance" and damage caused by the

11   "failure to maintain the vehicle properly in accordance with the instructions in the Owner's

12   Manual . . . that result in the failure of any part of the vehicle." Similarly, the Certified Pre-

13   Owned Warranty does not cover problems related to "[m]aintenance . . . ."

14   **E.**      **BMW Conceals the Safety Defect from Its Customers and Refuses to Pay for Repairs**

15          47.      On its website, BMW claims that it "prepare[s] [its] vehicles for the unexpected,"

16   and that its "quest for the next innovation" is "not just about greater power and more efficient

17   performance. It's also about safety."[2]

18          48.      Despite BMW's safety claims, as described above, the Class Vehicles present a

19   safety hazard and are unreasonably dangerous to consumers because of the danger of catastrophic

20   electrical system failure as a result of the vulnerable location of its key electrical components. As

21   a result, the vehicles are unsafe to drive.

22          49.      Even though BMW knew that the location of its key electrical components would

23   subject them to catastrophic failure and legitimately compromise driver and passenger safety, it

24   failed to warn consumers about this risk, and actively concealed it.

25          50.      The existence of the Class Vehicles' defects would be considered material by a

26

---

27   [2] BMW Safety Overview,
http://www.bmwusa.com/Standard/Content/Owner/Safety/Default.aspx?from=/Standard/Content/

28   Owner/BMWAssist/SafetyRD.aspx&return=/Standard/Content/Owner/BMWAssist/SafetyRD.aspx (last accessed July 31, 2013).

reasonable consumer deciding whether to purchase a vehicle. Had Plaintiffs and the Class members known that the Class Vehicles contained the defect alleged therein, they would not have purchased or leased the Class Vehicles.

51. Reasonable consumers, like Plaintiffs and the Class members, expect and assume that a vehicle's electronic component parts are safe and would not be placed in a position where they would be exposed readily and easily to water. Plaintiffs and Class members would also be reasonable in assuming that BMW would not sell vehicles with known safety defects, and would disclose any defects to consumers when it learns of them. Further, Plaintiffs and Class members would also be reasonable in assuming that BMW would not fail to disclose the defects, persistently deny the defects, and charge thousands of dollars to repair the defects.

52. When water infiltrates sensitive electronic components and attendant wiring located in the lowest point of the trunk compartment of Class Vehicles, the components and wiring corrode, short, malfunction, and cause the vehicles to fail. Consumers have described this defect as an "electronics swimming pool" and "puddl[ing]" in the spare tire compartment where, undetectable to consumers, the vehicles' electronic modules are located. Such "pooling," "puddling" and water infiltration is a serious safety issue.

53. Owners of the Class Vehicles filed complaints with NHTSA detailing the numerous electronic and safety issues that were caused as a result of the defect in at least 2008 and 2009, prior to when Plaintiffs and members of the Class purchased or leased the Class Vehicles. For example:

- NHTSA ID Number 10267870, filed May 6, 2009. "The sunroof drain clogged in my 2006 BMW 530 XI station wagon **causing water to pool in the car and short out the electrical system while I was driving**, which resulted in the loss of power to the dashboard including the speedometer. . . . My husband inspected the trunk where the water was pooling, while we waited for the tow truck, there were relay wires where the water was pooling and heat and team coming from the area. . . ." (emphasis added).

THIRD AMENDED CLASS ACTION COMPLAINT

- NHTSA ID Number 10233671, filed July 7, 2008. "If you carry liquids which spill in your trunk, the liquid can seep through and burn the wires, or **the car will stop running** (per service department), **which can cause an accident**. . . . We took the car in. The service rep. called & asked me if I had spilled water in the trunk. I told him on [July 4, 2008] a water bottle spilled. He told me due to the water spill, the repair would not be covered under the warranty. He said that they ran tests and the wires were burnt. . . . **I was not warned the wires are down there & not to carry liquid in the trunk**. I asked if I could drive the car and he said no there is a possibility of the car shutting down when the wires are burned. I can't use the trunk for grocery shopping for fear that something will 'leak' and cause the wires to 'burn' again, creating a possible fire hazard. If there is no fire due to the burnt wires, there is the possibility of the car 'shutting down,' causing an accident which could cause injury to myself or another party. The general public should be warned the BMW trunk can't handle transporting liquid stored in containers. . . ."

54.     Owners of the Class Vehicles also filed complaints on various forums dedicated to car safety describing their experiences with the defects' symptoms. For example:

- "**[F]ive minutes before entering the [ ] turnpike, my vehicle went into total electrical failure and my steering locked** . . . [I] had it towed to our local bmw dealer which found that the cassette on the panoramic sunroof to be defective . . . that caused a great deal of water to get into the vehicle and go under the spare tire in the rear where all the electrical is. [I] put a complaint into bmw of north America because a. the electrical should not be put under the spare tire where water could get in and b. I was about to get on the turnpike where the speed limit is 65 mph . . . there could have been a terrible accident. [I]t was [$]2498 to fix the issue, bmw was willing to pay half and relocate all the electrical to a safer more dryer place . . . there should be a recall on this issue, **bmw needs to relocate the electrical components to a safer area than underneath the spare tire**." [sic]

-13-

- "The sunroof drain clogged . . . causing water to pool in the car and **short out the electrical system while I was driving** . . . the dealership tells me that it's a common problem . . . there were relay wires where the water was pooling and heat and steam coming from the area . . . I'm fairly sure that if we had left it much longer it could have caused a fire."

- BMW Vehicle "suffered a complete electrical failure after the sunroof drainage system drained rain water into the compartments where . . . various . . . computer modules are stored . . . the car displayed two system malfunctions, followed shortly thereafter by the message 'Electronic system malfunction. Continued driving not possible" . . . The BMW dealer confirms that the sunroof drained rain water into the electronics compartments, shorting out at least four computer modules . . . certain system components, including an air bag control unit, showed evidence of a fire (presumably due to a short caused by the rain water) . . . ."

55.     At all relevant times, BMW expressly told Plaintiffs and Class members that its Owner's Manuals and written Maintenance Program provided complete and accurate information concerning the risks associated with its vehicles and the maintenance that should be performed in order to ensure that the vehicle could be operated safely. Plaintiffs and Class members relied on the accuracy and completeness of these vital written documents when deciding to purchase their vehicles. However, as described above, the Owner's Manual and Maintenance Program are incomplete and fail to provide vital information about known risks associated with the Class Vehicles

56.     Only after purchasing or leasing their vehicles were Plaintiffs or Class members able to determine that the Class Vehicles are highly prone to interior flooding and the potential catastrophic failure of its electrical components. They learn this only after water floods their vehicle's trunks and causes extensive interior damage to the electronic components located under the spare tire in the trunk of the vehicle, disrupting operational use of the vehicle, and causing the car to undergo extensive and expensive repairs.

57.     The cost to repair the defects described herein are exorbitant because consumers

will be required to pay hundreds, if not thousands, of dollars to repair damage to the Class Vehicles' electrical systems and other damage that occurs as a result of flooding.

58.     Moreover, the defects described herein materially impact the value of the Class Vehicles since few, if any, consumers would ever purchase a Class Vehicle knowing they are unsafe and prone to breakdown as a result of water damage.

59.     If Plaintiffs and Class members had known about the aforementioned design defects and the danger posed by such design defects at the time of sale or lease, Plaintiffs and members of the Class would not have purchased or leased their vehicles and/or would have refused to pay for repairs that BMW had a duty to provide without charge.  As a result of their reliance on BMW's omissions and/or material misrepresentations, owners and/or lessees of vehicles manufactured by BMW, Class members have suffered ascertainable loss of money and/or property and/or loss in value of their vehicles.

60.     BMW had superior and exclusive knowledge of the defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class members before they purchased or leased the Class Vehicles.

61.     Plaintiffs are informed and believe and based thereon allege that BMW acquired its knowledge of the defects prior to the time Plaintiffs purchased or leased the Class Vehicles at issue in this Complaint.

62.     BMW knew that the location of the Class Vehicles' electrical components were defective and not fit for their intended purpose.  For example, BMW technical service bulletins, repair invoices, and other documents not available to the public since at least February 2009 reveal that it was aware of water ingress problems into the trunk compartment and that such water ingress resulted in water damage to the electronic components located in the trunk compartment. Upon information and belief, BMW also knew of this defect from numerous consumer complaints and repair orders from BMW dealerships.  Nevertheless, BMW actively concealed and failed to disclose this defect to Plaintiffs and the putative Class members at the time of purchase or lease and thereafter.

63.     BMW intentionally misrepresented, either affirmatively or by omission, that its

-15-

vehicles were free from defects, and took no action to adequately warn or remedy the defect, but instead concealed, suppressed, and failed to disclose the potential damage that could be caused by such design defects.

64.     In fact, BMW systematically, purposefully, and fraudulently concealed the defects and misled customers by telling them that any problems in connection with the defects were actually caused by customers' failure to maintain their vehicles properly and/or by "outside influences"—by claiming, for example, that the flooding in the trunk and electronic damage was not due to design defects but rather due to the customer's failure  to clean out the sun roof drain tubes and/or even telling Class members that such damage was merely due to weather.

65.     At no point, however, do BMW's own maintenance or service manuals make reference to or provide any instruction on how customers can avoid having their drains clog, nor has BMW issued any Technical Service Bulletins regarding the process of how such defective sunroof drains should be cleaned.

66.     Despite its awareness and actual knowledge of the design defects referenced herein and the attendant problems evidenced by, among other things, a great number of customer complaints, BMW continues to fail to warn, or even mention, anything about the location of the Class Vehicles electrical components or the flood-causing sunroof drain defect through its agents or in the owner's manual or any of its marketing materials.

67.     BMW knew that the defective design of the Class Vehicles were causing substantial problems for the putative Class members; however, upon information and belief, BMW has systematically refused to pay for repairs required to putative Class members' vehicles caused by the uniform defects described herein.

68.     While the damages are caused by BMW's defectively designed vehicles and while numerous customers have requested that BMW remedy and/or address the design defects and the resulting flooding problems at BMW's own expense, BMW and its agents have failed and/or refused to do so.

69.     To date, BMW has failed to warn or inform their customers of the known design defects, and actively concealed these defects from consumers and Plaintiffs and other Class

-16-

members.

70.    At the same time, unknown to most (if not all) Class members, BMW issued service bulletins to its authorized service technicians to perform certain repairs to minimize the impact of the defect including relocating the electronic components from the lowest point in the trunk to a higher point in the trunk that would not subject the electronic components to damage caused by leaks and standing water through ordinary and expected use of the vehicles.  The service bulletin also requires service centers to install a warning label advising consumers to avoid spilling liquids in the trunk of the vehicle.

71.    Despite issuing a service bulletin in August 2009, which replaced an earlier February 2009 service bulletin about the same issue (Exhibit 1), and notice of the defect from numerous consumer complaints, dealership repair orders, NHTSA complaints, and other sources, BMW has not recalled the Class Vehicles to repair the defect, has not offered all of its customers a suitable repair, modification, or replacement of the defective components free of charge, and has not offered to reimburse the Class members who incurred costs relating to flooding and the subsequent damage and failure of the electronic component parts located in the Class Vehicles' trunks.

72.    As a result of BMW's conduct alleged herein, Plaintiffs and Class members have been harmed and have suffered actual damages in that the electronic component parts located in the Class Vehicles' trunks are experiencing continuous and progressive failure problems, and will continue to fail before their expected useful life has run.

## TOLLING OF THE STATUTE OF LIMITATIONS

73.    Since the defects in the design or manufacture of the Class Vehicles cannot be detected until the defect manifests, Plaintiffs and the Class members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite the exercise of due diligence.

74.    Plaintiffs and the Class members had no realistic ability to discern the Class Vehicles' defects until after water collected in the trunk near the electrical components of the Class Vehicles.  In addition, despite their due diligence, Plaintiffs and the Class members could

not reasonably have been expected to learn or discover that they were deceived and that material information concerning the vulnerability of the trunk's electrical components was concealed from them until after the manifestation of the failure. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class members.

75. Moreover, BMW is under a continuous duty to disclose to the Plaintiffs and the Class members the true character, quality, and nature of the Class Vehicles and to disclose the existence of any defects. BMW knowingly, affirmatively, and/or actively concealed the true character, quality, and nature of the defects at issue. Furthermore, Plaintiffs reasonably relied upon BMW's knowing, affirmative, and/or active concealment. Based on the foregoing, BMW is estopped from relying on any statutes of limitation in defense of this action.

76. The causes of action alleged herein did or will accrue only upon discovery of the defects referenced herein, BMW's refusal to cover the repairs of the Class Vehicles, and BMW's fraudulent concealment of the defect. Plaintiffs and Class members did not discover and could not have discovered through the exercise of reasonable diligence the true nature of the defect.

## CLASS ACTION ALLEGATIONS

77. Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against BMW on their own behalf and on behalf of the Class (the "Class") defined below.

78. Plaintiffs bring this class action on behalf of themselves and the following proposed Class:

> All persons in California who currently own or lease, or who have owned or leased, any BMW X5 series vehicles, X3 series vehicles, and 5 series vehicles.

79. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are business entities for purposes of Plaintiffs' claims for relief under the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.* Also specifically excluded are BMW, its officers, directors, agents,

-18-

trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by BMW, and its heirs, successors, assigns, or other persons or entities related to or affiliated with BMW and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

80. <u>Numerosity</u>. Though the exact number and identity of Class members is not presently known, they can be identified in BMW's records through coordinated discovery pursuant to this class action. Plaintiffs believe that hundreds of thousands of BMW vehicles equipped with the defectively-designed trunk electronic components have been sold or leased in the United States, including in the State of California.

81. <u>Existence and predominance of common questions</u>. Common questions of fact and law predominate over any questions affecting only individual members of the Class. The predominating common or class-wide questions of fact include the following:

        a. Whether the location of the Class Vehicles' electronic components in the trunk compartment constitutes a product defect;

        b. Whether the class Vehicles' Owner's Manuals, written Maintenance Program, and product labeling sufficiently warn consumers about the dangers associated with the Class Vehicles;

        c. Whether BMW's inadequate maintenance recommendations cause significant safety risks or additional damage to the Class Vehicles;

        d. Whether BMW knowingly failed to disclose and warn of the electronic component placement defect with the intent that others rely upon such concealment, suppression, or omission;

        e. Whether Plaintiffs and Class members are entitled to entry of final injunctive relief compelling BMW to recall, inspect and, as necessary, effectively repair and/or replace the electronic component defects referenced herein;

        f. Whether Plaintiffs and Class members are entitled to entry of final injunctive relief compelling BMW to fully and adequately inform

-19-

consumers of the electronic component placement design defect and/or inadequate maintenance recommendations;

g. Whether BMW had a duty to disclose to its consumers material facts concerning the serious problems that would inevitably result from its inherently defective design in the placement of electronic component parts;

h. Whether BMW's conduct as alleged herein constitutes a violation of the California Consumer Legal Remedies Act and the California Unfair Competition law;

i. Whether BMW's sale of the defective Class Vehicles constitutes a breach of the implied warranty of merchantability;

j. Whether BMW should issue a maintenance directive on checking the sunroof drains for clogs as a part of its recommended scheduled maintenance service.

82. BMW's defenses, to the extent that any such defenses apply, are applicable generally to Plaintiffs and the entire Class and are not distinguishable as to proposed Class members.

83. Typicality. Plaintiffs' claims are typical of the claims of the Class members, as all Class members were and are similarly affected by BMW's wrongful conduct complained of herein. Plaintiffs and each of the Class members lease or leased and/or own or own BMW vehicles designed with a defective placement of electronic component parts in the trunk of the Class Vehicles, which are subject to catastrophic failure due to their placement in a vulnerable position.

84. Adequacy. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seeks to represent. Plaintiffs have retained counsel highly experienced in the prosecution of complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of all members of the Class.

85. Superiority. A class action is superior to any other methods available for both fair

and efficient adjudication of the rights of each class member. Joinder of individual Class members is impracticable. Individual litigation would be unnecessarily costly and burdensome and would deter individual claims. To process individual cases would increase both the expenses and the delay not only to Class members, but also to BMW and the Court. In contrast, a class action in this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

86. The Class may be certified because:

    a. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Class that would establish incompatible standards of conduct for BMW;

    b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c. BMW has acted or refused to act on grounds generally applicable to the Class members, thereby making appropriate final and injunctive relief with respect to Class members as a whole

## FIRST CLAIM FOR RELIEF
### (For Violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*)

87. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

88. BMW is a "person" within the meaning of Civil Code § § 1761(c) and 1770.

89. BMW sells "goods" within the meaning of Civil Code § § 1761(a) and 1770.

90. Plaintiffs and the Class are consumers within the meaning of Civil Code §

THIRD AMENDED CLASS ACTION COMPLAINT

1  1761(d).

2      91.    Plaintiffs' purchase of a BMW vehicle equipped with defective electronic

3  component placement marketed and sold by BMW constitutes a transaction within the meaning of

4  Civil Code §§ 1761(3) and 1770.

5      92.    BMW's conduct violated and continues to violate the CLRA in at least the

6  following respects:

7              a.    In violation of section 1770(a)(5) of the CLRA, BMW represented that

8                    goods (*i.e.* its vehicles) have characteristics or benefits which they do not

9                    have.

10             b.    In violation of section 1770(a)(7) of the CLRA, BMW represented that

11                   goods are of a particular standard, quality, or grade when they are of

12                   another; and

13             c.    In violation of section 1770(a)(9) of the CLRA, BMW advertised goods

14                   with the intent not to sell them as advertised.

15     93.    BMW had knowledge of the defects as described herein.

16     94.    BMW engaged in these unfair or deceptive acts and practices with the intent that

17  they result, and which did result, in the sale of the subject vehicles to Plaintiffs and the Class.

18     95.    By engaging in unfair or deceptive conduct in violation of the CLRA, BMW

19  actively concealed and failed to disclose material facts about the true characteristics of the

20  transaction leading to Plaintiffs' and Class members' purchase of the subject vehicles, despite

21  having knowledge of the defects described herein before the Plaintiffs and Class Members

22  purchased or leased the Class Vehicles.

23     96.    The fact that consumers were entering into a sale for a vehicle prone to flooding

24  and damage due to defectively-placed electronic component parts, as well as defectively-designed

25  sunroof drains, is material in that a reasonable person would have considered that an important

26  factor in deciding whether to complete the transaction for the subject vehicle.  Specifically, the

27  fact that the Class Vehicles purchased by Plaintiffs were defective in that it was prone to flooding,

28  water damage and potentially dangerous failure of vital electronic component parts is material to

-22-

them. Plaintiffs would likely not have purchased the subject vehicle had they known of that fact.

97. As a direct and proximate result of BMW's violations of law, Plaintiffs and the Class members have been injured. Pursuant to the provisions of Civil Code section 1782(d), on March 1, 2013, Plaintiffs provided notice by certified mail to BMW of their intention to seek damages under Civil Code sections 1750, *et seq.*, unless BMW corrects, repairs, replaces or otherwise rectifies its violations of the CLRA. Despite receiving this notice, BMW failed to adequately respond to Plaintiffs' demand within thirty (30) days from the date the notice was serviced. As such, the Class members are entitled to actual and punitive damages along with restitution and disgorgement of all earnings, profits, compensation and benefits obtained by BMW as a result of their violations of the CLRA.

98. Plaintiffs seek an order enjoining the unlawful practices described herein and an Order requiring BMW to notify the Class members of its violations of the CLRA and the remedy it will provide to them.

## SECOND CLAIM FOR RELIEF
### (For Violations of Cal. Bus. & Prof. Code § 17200, *et seq*.)

99. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

100. BMW's practices as alleged in this Complaint constitute unlawful, unfair, and fraudulent practices under the Unfair Competition Law, Business and Professions Code section 17200, *et seq*. ("UCL").

101. BMW committed unlawful acts and practices by, among other things, engaging in conduct, as alleged herein, that violates the CLRA, Cal. Civ. Code §§ 1750, *et seq*.

102. BMW committed unfair business practices by:

    a. Engaging in conduct, as alleged herein, where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and other Class members;

    b. Engaging in conduct, as alleged herein, that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the

other Class members; and

    c.    Engaging in conduct, as alleged herein, that undermines or violates the stated policies underlying the CLRA, Civ. Code §§ 1750, *et seq.*, which seeks to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace, and thus provide a sufficient predicate for Plaintiffs' claims for unfair business practices.

103.    BMW knew or should have known of the defects as described herein.

104.    BMW committed fraudulent business practices by engaging in conduct, as alleged herein, that was and is likely to deceive consumers acting reasonably under the circumstances. BMW's fraudulent practices include but are not limited to failing to adequately disclose and/or concealing from Plaintiffs and Class members that electronic components in the Class Vehicles' trunks are prone to failure due to their placement and susceptibility to water exposure despite having knowledge of these defects, or that cleaning sun roof drains should be part of scheduled and routine maintenance to prevent water intrusion and resulting property damage or damage to the electronic components in the trunk compartment of the vehicle.

105.    BMW violated the California UCL when it failed to disclose the fact that the Class Vehicles pose safety risks and were defective as described herein when it had a duty to disclose the safety risks and defects to consumers and instead falsely represented that the Class Vehicles were safe for consumer use.

106.    Plaintiffs and the Class members have suffered injury in fact and have lost money and property as a result of BMW's unlawful, unfair, or fraudulent practices, in that, among other things:

    a.    Plaintiffs and Class members would not have paid for the subject vehicles had they know the vehicles contained such defects;

    b.    Plaintiffs and Class members have been deprived of making an informed decision about the vehicles they have purchased or leased; and

    c.    Plaintiffs and Class members have incurred out-of-pocket expenses to

-24-

repair electrical components damaged as a result of water intrusion.

The above-described unfair, unlawful and fraudulent business practices conducted by BMW present a threat and likelihood of harm and deception to members of the Class in that BMW has systematically perpetrated and continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiffs, on behalf of themselves and the Class, seeks an order enjoining BMW from continuing to engage in unlawful, unfair or fraudulent business practices, and other acts prohibited by law. Plaintiffs also seeks an order providing restitution for monies paid for repairs and maintenance associated with the sunroof drain defect, and other appropriate injunctive relief.

## THIRD CLAIM FOR RELIEF
### (Breach of Implied Warranty of Merchantability under the Song-Beverly Act, Cal. Civ. Code §§ 1792, 1791.1, and 1794, *et seq.*)

107.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

108.    Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 *et seq.*, every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable within the meaning of Cal. Civ. Code § 1791.1(a). Therefore, consumers need not be in privity with the manufacturer to bring an implied warranty claim.

109.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code Cal. Civ. Code § 1791(a).

110.    BMW is a "manufacturer" within the meaning of Cal. Civ. Code Cal. Civ. Code §§ 1791(j).

111.    Plaintiffs bought the Class Vehicles in the State of California.

112.    At the time of sale, and currently, BMW is in the business of manufacturing, marketing, and selling the Class Vehicles.

113.    BMW provided Plaintiffs and Class members with an implied warranty that the

THIRD AMENDED CLASS ACTION COMPLAINT

Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold or leased. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably and reliable safe transportation because, *inter alia*, the Class Vehicles and their electrical systems suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

114. Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, a warranty that the Class Vehicles and their electronics manufactured, supplied, distributed, and/or sold by BMW were safe and reliable for providing transportation; and a warranty that the Class Vehicles and their electronics would be fit for their intended use while the Class Vehicles were being operated.

115. Contrary to the applicable implied warranties, the Class Vehicles and their electronics at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of the electronics and drainage around the electronics.

116. The defect in the Class Vehicles exists at the point of sale, without warning to the Class Members, and causes the Class Vehicles to malfunction and become inoperable, making the Class Vehicles unsafe and unfit for their ordinary purpose.

117. Plaintiffs' and Class members' Vehicles were not adequately labeled nor did BMW provide adequate notice to the Class members of the defect in the Class Vehicles.

118. Plaintiff and Class members were intended third-party beneficiaries of the contracts for sale of the Class Vehicles from BMW to the dealerships who ultimately sold the Class Vehicles to Plaintiffs and Class members. BMW, who manufactures and markets the Class Vehicles, knew that Plaintiffs and the Class members were the end-users of the Class Vehicles, and brought itself into privity with Plaintiffs and Class members who relied upon written representations and advertisements made by BMW as alleged herein.

119. As a direct and proximate cause of BMW's breach of implied warranty, Plaintiffs and Class members have sustained damages and other losses in an amount to be determined at

-26-

trial.

<h2 style="text-align:center"><u>PRAYER FOR RELIEF</u></h2>

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against BMW as follows:

A.   An Order certifying this action as a class action;

B.   An Order appointing Plaintiffs as class representatives of the Class, and appointing counsel undersigned to represent the Class;

C.   An Order awarding injunctive relief by requiring BMW to issue corrective actions including notification, recall, and repair of the Class Vehicles, or the establishment of a fund or program to repair the Class Vehicles;

D.   Payment to the Class of all damages associated with the replacement of the defective products, in an amount to be proven at trial;

E.   Restitution as authorized by law;

F.   An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class;

G.   Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

H.   Such other and further relief as this Court may deem just, equitable, or proper.

<h2 style="text-align:center"><u>DEMAND FOR JURY TRIAL</u></h2>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  July 2, 2014                    KERSHAW, CUTTER & RATINOFF LLP


By: */s/ William A. Kershaw*
     William A. Kershaw

Stuart C. Talley
wkershaw@kcrlegal.com
stalley@kcrlegal.com
401 Watt Avenue
Sacramento, California 95864
Telephone:     (916) 448-9800
Facsimile:      (916) 669-4499

WEXLER WALLACE LLP
Edward A. Wallace
Amy E. Keller
eaw@wexlerwallace.com
aek@wexlerwallace.com
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone:     (312) 346-2222
Facsimile:     (312) 346-0022

THE LAW OFFICES OF JOSEPH R. SANTOLI
Joseph R. Santoli
josephsantoli@aol.com
340 Devon Court
Ridgewood, New Jersey 07450
Telephone:     (201) 926-9200
Facsimile:     (201) 575-2184

WIGINGTON RUMLEY DUNN, L.L.P
Joseph M. Dunn
jdunn@wigrum.com
601 Howard St.
San Antonio, Texas 78212
Telephone:     (210) 487-7500
Facsimile:     (210) 487-7501

KNAPP, PETERSEN & CLARKE
Stephen M. Harris
smh@kpclegal.com
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone:     (818) 547-5000
Facsimile:     (818) 547-5329

THE LAW OFFICES OF ROBERT L. STARR
Robert L. Starr
robert@starrlawmail.com
23277 Ventura Boulevard
Woodland Hills, California 91364
Telephone:     (818) 225-9040
Facsimile:     (818) 225-9042

*Attorneys for Plaintiffs and the Putative Class*

THIRD AMENDED CLASS ACTION COMPLAINT

## DECLARATION OF WILLIAM A. KERSHAW
## PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)

I, William A. Kershaw, declare as follows:

1.      I submit this declaration pursuant to section 1780(d) of the California Consumers Legal Remedies Act. I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.

2.      Defendant BMW of North America, LLC is a Delaware corporation with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. BMW of North America, LLC was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in San Francisco County, California, and throughout the United States of America.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on July 3, 2014, in Sacramento, California.

*/s/ William A. Kershaw*
William A. Kershaw

# Exhibit 1

*Sharma, et al. v. BMW of North America, LLC*, No. C-13-2274

Plaintiffs' Third Amended Class Action Complaint



SI B 61 13 06
General Electrical Systems

August 2009
Technical Service

This Service Information bulletin supersedes SI B61 13 06 **dated February 2009.**

designates changes to this revision

SUBJECT
**Various Electrical Problems Caused by Water Ingress**

MODEL
E60 (5 Series)

SITUATION
Water ingress into the luggage compartment may cause various electrical problems or faults associated with the MPM (Micro Power Module); PDC (Park Distance Control); M-ASK (Multi-Audio System Controller); CCC (Car Communication Computer); CID (Control Information Display); TCU (Telematics Control Unit); LOGIC-7 (Top Hi-Fi); RDC (Tire Pressure Monitor) or SDARS (Satellite Radio Receiver) control modules. In most cases, the water collects in the spare wheel recess.

CAUSE
Insufficient sealing may allow water to enter the luggage compartment due to the vacuum generated while driving.

PROCEDURE
**1. Replace damaged components.**

    a. Replace all water-damaged components in the spare tire well and perform applicable electrical repairs to wires and/or connectors.

NOTE: If any of the modules to be replaced requires TeileClearing authorization, this Service Information does not negate the need for this authorization.

**The following steps will help identify the cause of the water leak and prevent a reoccurrence.**

**2. Inspect for Water Leaks.**

    a. Remove the trunk carpet and trim panels.

    b. Thoroughly water test the vehicle to allow for an adequate inspection for points of water ingress.

        o Due to the fact that this leak may only be present while driving in the rain, weather conditions allowing, the vehicle should be road tested if it is raining and then inspected upon returning to the workshop.

        o If the vehicle has been leaking intermittently for an extended period of time, mineral deposits should define the water path.

    c. Check the following locations for potential water leaks. If any of these areas appears to be the cause, replace the defective seal or repair seams with brushable seam sealer Wurth Article # 0890 1021.

    d. Check:

o Sunroof drains for being loose on the rear of the sunroof or clogged

o Seam sealer on the body, leading to the left or right trunk air extractors (rear bumper needs to be removed for access to this area)

o Seam sealer around the bumper mounts and spare tire well

o Trunk air extractors for being properly seated in the body openings (this can be seen from inside the trunk)

o Trunk air extractors for being seated but not creating a good seal against the body

- Seal the extractor to the body using silicone sealant

o Plastic rivet on the trim piece near the trunk hinge (left or right side) for being loose or missing

o Trunk lid seal:

- Ensure that the trunk is making consistent contact with the trunk seal and no damage to the seal is present.

- Adjust the trunk and/or striker as necessary.

o Missing wire harness grommet leading into the trunk, just behind the rear window

o Body plugs on the interior sides of the trunk missing or poorly sealed

o License plate light gasket for damage

o Remove both tail lamps and ensure that the seal is not damaged on either.

- Reinstall both tail lamps and ensure the fasteners are properly torqued.

o Whether license plate screw grommets are poorly seated

o Whether trunk lock cylinder seal is damaged

o Whether trunk lid switch seal is damaged

o Incorrect welding in the spare wheel recess

e. If no suspect areas for water ingress are found in the previous visual inspection or water test, continue with the following smoke test.

### 3. Smoke Test

NOTE: The following smoke test should be performed with the interior trunk trim removed, the rear bumper cover removed, and the vehicle on a lift. The VACUTEC® Smoke Machine or equivalent may be used for this procedure.

a. Fold down one side of the split folding rear seat; insert the smoke machine nozzle into the trunk, and then fold the seatback up.

b. Turn the smoke machine on and allow the trunk to fill with smoke.

c. After 5-10 minutes, the trunk will be completely filled; if any water paths exist, they should be visible on the outside of the vehicle.

   o NOTE: Disregard the small amount of smoke which will come out of the air extractors.

d. Closely inspect the areas around the following:

   o Trunk lid

   o Quarter panels

   o Lower rear tail panel around the bumper supports

   o Side panels around the air extractors

   o Floor pan up to the front of the rear sub-frame

e. Repair the leaking area as necessary.

f. If no leaks are found after smoke testing the trunk, continue with the following repair.

**4. No Leaks Identified**

a. Relocate the RDC module to the left-hand side of the trunk per Repair Instruction RA 36 11...

b. Relocate both the SDARS and PDC modules, if so equipped, per the attached repair procedure **SI B61 13 06 Procedure.pdf.**

c. In the bottom of the trunk are 4 stamped openings in the sheet metal which are filled with seam sealer. Drill a 1-2mm one hole through the center of each of the forward 2 stamped openings only.

NOTE: The drilled holes should only penetrate the seam sealer and not the steel floor pan.



d. Install a warning label (PN 71 24 6 777 721) on the right side of the tool kit cover (1). The customer should be notified of the label and the fact that liquids should not be present on or under the trunk insulation, due to the sensitive nature of the electronic control units located in the spare tire well.

**PARTS INFORMATION**

| Part Number | Description | Quantity |
| --- | --- | --- |
| 71 24 6 777 721 | Trunk warning label | 1 – if necessary |
| 36 20 6 788 234 | RDC Bracket (Procedure step 4a) | 1 – if necessary |
| 61 12 9 193 968 | RDC Repair harness (Procedure step 4a) | 1 – if necessary |
| 51 45 1 949 950 | Body nut (Procedure step 4a) | 1 – if necessary |

| 07 11 9 901 176 | Screw (Procedure step 4a) | 1 – if necessary |
| 12 34 6 902 588 | Harness tape (Procedure step 4b) | 1 – if necessary |
| 51 36 7 117 327 | Velcro pads (Procedure step 4b) | 12 – if necessary |
| Locally sourced** | Wire ties (Procedure step 4b) | 8 – if necessary |
| 51 47 7 058 155 | Luggage compartment trim panel | 1 – if necessary |
| | (Procedure step 4b) | |

The VACUTEC® Smoke Machine 625-522B-BMW may be used for this procedure (step 2) and is available through the BMW Equipment Program. This device automatically converts air to high purity nitrogen, using Pressure Swing Absorption (PSA) nitrogen technology. Orders for the VACUTEC® Smoke Machine 625-522B-BMW can be placed by calling the BMW Equipment Program at 1 888 222 7997.

This smoke machine utilizes an UltraTraceUV® smoke solution. The smoke solution incorporates an ultraviolet dye which helps pinpoint the leak with an ultraviolet residue surrounding the leak area. Determining the source of the leak is made easy when the included Hi-Density True UV LED light and incandescent white light are used.

### WARRANTY INFORMATION
Provided the water ingress is caused by a defect in material or workmanship this repair can be claimed under the terms of the BMW New Vehicle Limited Warranty.

| Defect Code: | Refer to KSD2 | |
|---|---|---|
| Labor Operation: | Labor Allowance: | Description: |
| 5199000 | W/T | Work time allowance for performing the |
| Refer to KSD2 | Refer to KSD2 | modifications as outlined above |
| | | Labor operations for various component R/R |

| Sublet Code 4** | $0.50 | ** Reimbursement of up to the amount listed may be charged to sublet code 4 for the wire ties required to perform this repair. Claiming this part number outside of sublet code 4 will result in a delayed or denied claim payment. |
|---|---|---|

### ATTACHMENTS
view PDF attachment B611306Attachment.

[ Copyright © 2009 BMW of North America, LLC ]