IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MONITA SHARMA, et al.,

    Plaintiffs,

    v.

BMW OF NORTH AMERICA, LLC,,

    Defendant.

No. C-13-2274 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Before the Court is defendant BMW of North America, LLC's ("BMW") "Motion to Dismiss for Failure to State a Claim," filed August 25, 2014. Plaintiffs Monita Sharma ("Sharma") and Eric Anderson ("Anderson") have filed opposition, to which BMW has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

Plaintiffs allege they each purchased a vehicle "designed, manufactured, distributed [and] sold" by BMW, and that their respective vehicles have a "design defect." (See Third Amended Class Action Complaint ("TAC") ¶ 1.) According to plaintiffs, their respective vehicles "were designed so that certain vital electrical components[,] known as SDARS, RDC, and PDC Modules, are located in the lowest part of the vehicles' trunk," where "they are especially prone to water damage that can be caused through the normal and ordinary

---

[1] By order filed October 21, 2014, the Court took the matter under submission.

use of the vehicle." (See id.) Plaintiffs allege their respective vehicles "were also designed so that drainage tubes used to drain water away from the vehicles' sun roofs are located directly next to the vital electrical equipment that is located in the bottom of the trunk," that the drains "were designed in such a way that they are prone to become clogged with dirt, debris, leaves, and other naturally-occurring materials," that "[w]hen these tubes become clogged, they come loose or leak into the trunks of the vehicles," and that the leaks "eventually flood the trunks of the vehicles, caus[ing] the vital electronic components contained at the bottom of the vehicles' trunks to short." (See TAC ¶ 2.)

Plaintiffs allege Sharma purchased her vehicle, a "2008 BMW X5," in May 2009 (see TAC ¶ 9) and Anderson purchased his vehicle, an "E60 530I," on March 12, 2010 (see TAC ¶ 19). According to plaintiffs, they each experienced problems with said electrical components, resulting from water intrusion, and were required to pay for repairs performed by a BMW dealership. (See TAC ¶¶ 13-18, 24-26.) Plaintiffs allege that although BMW knew of the asserted defect prior to the dates on which plaintiffs purchased their respective vehicles (see TAC ¶¶ 4, 6), BMW did not advise them of the defect (see TAC ¶¶ 6, 49, 56).

Based on the above allegations, plaintiffs allege three claims for relief, specifically, a claim under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1784, a claim under § 17200 of the California Business & Professions Code, and a claim under the Song-Beverly Consumer Warranty Act, §§ 1790-1795.8.

**DISCUSSION**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

BMW argues that each of plaintiffs' three claims for relief is subject to dismissal. The Court considers each claim for relief in turn.

**A. First Claim for Relief: Violations of CLRA**

By order filed June 19, 2014, the Court dismissed plaintiffs' CLRA claim, as set forth in the Second Amended Class Action Complaint, for failure to allege sufficient facts to support a finding that BMW was aware of the asserted defect at the time plaintiffs purchased their respective vehicles. See Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 (9th Cir. 2012) (holding plaintiff, to state CLRA claim based on failure to disclose defect, must allege facts to support finding defendant "was aware of [the] defect at the time of sale"). BMW argues plaintiffs have failed to cure such deficiency, and, in addition, that the CLRA claim is barred by the statute of limitations.

**1. BMW's Awareness of Defect**

In their opposition, plaintiffs contend they have now alleged sufficient facts to support a finding that BMW was aware of the asserted defect at the time plaintiffs purchased their vehicle. As discussed below, the Court agrees.

Specifically, plaintiffs now rely on a "Service Information bulletin" issued by BMW in February 2009, and attached as an exhibit to the TAC (see TAC Ex. 1; see also TAC ¶ 4),[2] which bulletin predates plaintiffs' respective purchases. The bulletin pertains to the "E60 (5 Series)" model, describes its "Subject" as "Various Electrical Problems Caused by Water Ingress," and, in the portion of the bulletin titled "Situation," states that "[w]ater ingress into the luggage compartment may cause various electrical problems or faults associated with [various specified components]," including SDARS, RDC, and PDC Modules. (See id.)

---

[2] The copy of the bulletin attached to the TAC is dated "August 2009," and is a revision to the bulletin issued by BMW in February 2009. (See TAC Ex. 1.) The differences between the February 2009 and August 2009 bulletins, which are identified in the August 2009 bulletin, concern a modification of one repair procedure as well as additional parts that may be needed to perform it, and do not appear material to the issue of notice.

3

The bulletin also identifies fifteen locations for a technician to check for water leaks, including checking "[s]unroof drains for being loose on the rear of the sunroof or clogged." (See id.)

The Court finds the above-referenced bulletin sufficient at the pleading stage to show BMW's awareness of the existence of the asserted defect prior to the dates on which plaintiffs purchased their respective vehicles. See, e.g., In re MyFord Touch Consumer Litig., 2014 WL 2451291, at *8-9 (N.D. Cal. May 30, 2014) (holding plaintiffs who purchased vehicles in 2013 "adequately pled knowledge on the part of [defendant]," where defect was subject of service bulletins issued prior to 2013). Although the bulletin pertains only to the E60 model, the model purchased by plaintiff Anderson, the Court finds it sufficient to show BMW's awareness as to the 2008 BMW X5 model, the model purchased by plaintiff Sharma, in light of plaintiffs' allegation that both such models have the same asserted design defect. (See TAC ¶¶ 35-36.)

**2. Statute of Limitations**

As noted above, plaintiffs allege Sharma purchased her vehicle in May 2009 and Anderson purchased his vehicle in March 2010. BMW argues the CLRA claim is barred by the applicable three-year statute of limitations, noting plaintiffs base their claim on a failure to disclose the alleged defect prior to the dates of those purchases and that plaintiffs' initial complaint was filed on May 17, 2013, more than three years thereafter. See Cal. Civ. Code § 1783 (providing claim under CLRA "shall be commenced not more than three years from the date of the commission of [the challenged] method, act, or practice"). Plaintiffs, citing California's discovery rule, argue they have alleged sufficient facts to establish their claims are timely.

Under California law, "the discovery rule postpones accrual of a claim until the plaintiff discovers, or has reason to discover, the cause of action." See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1024 (9th Cir. 2008) (internal quotation and citation omitted). "[I]n cases of fraudulent concealment," the plaintiff, to establish delayed accrual under the discovery rule, must allege "(1) when the fraud was discovered; (2) the

circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." See id. (internal quotation and citation omitted).

The Court finds plaintiffs have alleged sufficient facts to support their reliance on the discovery rule. In particular, with respect to the first and second requirements identified above, plaintiffs allege that Sharma did not discover the asserted defect until, in "late-2012 and early-2013," she "began to experience a series of electrical problems related to water infiltration and accumulation in or around the electronic components located in the trunk of her vehicle" (see TAC ¶ 11), and that Anderson did not discover the asserted defect until 2012, when he "experienced difficulties with some of the car's electronic components, expressed as a failure to start" and was "informed" by a BMW dealership of "pooling water in his trunk" (see TAC ¶ ¶ 19, 22, 24). With respect to the third requirement, plaintiffs allege that, prior to their discovery of the asserted defect, they "expect[ed] and assum[ed] that a vehicle's electronic component parts [were] safe and would not be placed in a position where they would be exposed readily and easily to water." (See TAC ¶ 51.) In support of such allegation, plaintiffs further allege that BMW's Owner's Manuals and written Maintenance Program, which documents BMW stated "provide[d] complete and accurate information concerning the risks associated with its vehicles" (see TAC ¶ 55), contained no language suggesting that any possible defect existed with respect to the location of the subject electrical components (see TAC ¶ 40) (alleging that, although Owner's Manuals include "page after page of detailed information concerning the vehicle's trunk," said documents do not in any manner apprise owners that "located at the bottom of the trunk is vital electrical equipment that will be ruined, malfunction, and fail if water enters the trunk"); (TAC ¶ 44) (alleging "written Maintenance Program" does not include warning that "critical electronic equipment in the vehicle is highly vulnerable to water damage or that the vehicles' sun roof drainage tubes can be easily clogged and lead to the damage of this vital equipment").

//

### 3. Conclusion

Accordingly, the First Claim for Relief is not subject to dismissal.

### B. Second Claim for Relief: Violations of Cal. Bus. & Prof. Code § 17200

BMW argues that the Second Claim for Relief, which is derivative of the First Claim for Relief, is subject to dismissal for the asserted reason that plaintiffs have failed to sufficiently allege any violation of law. As discussed above, plaintiffs have sufficiently alleged a violation of the CLRA.

Accordingly, the Second Claim for Relief is not subject to dismissal.

### C. Third Claim for Relief: Breach of Implied Warranty of Merchantability Under the Song-Beverly Act

Under the Song-Beverly Act, "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable," see Cal. Civ. Code § 1792, which warranty means, inter alia, the goods are "fit for the ordinary purposes for which such goods are used," see Cal. Civ. Code § 1791.1(a). Where, as here, the subject goods are not purchased new, the duration of the implied warranty of merchantability "shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable, but in no event shall such implied warranties have a duration of less than 30 days nor more than three months following the sale." See Cal. Civ. Code § 1795.5(c).

BMW argues plaintiffs fail to state any facts to support a finding that a breach of the implied warranty of merchantability occurred during the three-month period provided by statute. As discussed below, the Court agrees.

Given that plaintiffs purchased used vehicles covered by express warranties with durations in excess of three months (see Order, filed June 19, 2014, at 6:18-21 (taking judicial notice of contents of express warranties applicable to plaintiffs' vehicles)), the duration of the implied warranty of merchantability applicable to each such vehicle is three months from the date of the sale. See Cal. Civ. Code § 1795.5(c). Consequently, as

1  Sharma purchased her vehicle in "May 2009" (see TAC ¶ 9), the duration of the implied
2  warranty of merchantability applicable to her vehicle ended no later than the end of August
3  2009, and, as Anderson purchased his vehicle on March 12, 2010 (see TAC ¶ 19), the
4  duration of the implied warranty applicable to his vehicle ended on June 12, 2010.

5        Plaintiffs allege that each plaintiff first experienced problems with his/her respective
6  vehicle well beyond the applicable three-month period; plaintiffs allege Sharma first
7  experienced "electrical problems" with her vehicle in "late 2012" (see TAC ¶ 11), and that
8  Anderson first experienced "difficulties" with "electronic components" in his vehicle "[t]wo
9  years after purchasing the vehicle" (see TAC ¶¶ 22, 24).  Plaintiffs do not allege that at any
10  earlier time, and, in particular, during the three-month period set forth in § 1795.5(c), they
11  encountered any difficulty in using their respective vehicles "for the ordinary purposes for
12  which such goods are used," see Cal. Civ. Code § 1791.1(a), i.e., for transportation.  Under
13  such circumstances, plaintiffs fail to state a claim for breach of the implied warranty of
14  merchantability.  See Atkinson v. Elk Corp., 142 Cal. App. 4th 212, 217-18, 227, 232 (2006)
15  (holding where plaintiff alleged roof shingles "cracked" and "had to be replaced" more than
16  five years after expiration of period set forth in Song-Beverly Act, plaintiffs' claim for breach
17  of implied warranty of merchantability was "barred as a matter of law"); Tietsworth v. Sears,
18  Roebuck & Co., 720 F. Supp. 2d 1123, 1142-43 (N.D. Cal. 2010) (holding, where washing
19  machine served "ordinary purpose of cleaning clothes within the [applicable implied
20  warranty] period," plaintiff could not state implied warranty claim under Song-Beverly Act
21  based on allegation machine "stopped working altogether" after expiration of statutorily
22  provided period).

23        The Court finds unpersuasive plaintiffs' argument that where a product has a latent
24  defect, the manufacturer breaches the implied warranty of merchantability on the date of
25  the sale.  In particular, the Court finds plaintiffs' reliance on Mexia v. Rinker Boat Co., 174
26  Cal. App. 4th 1297 (2009), unavailing, for the reason that Mexia, and the authority on which
27  Mexia relies, is distinguishable on its facts.
28  //

In Mexia, the plaintiff's boat, more than two years after it was purchased, required repairs due to "corrosion in the engine." See id. at 1302. The California Court of Appeal held that the plaintiff had alleged sufficient facts to support a finding that the "corrosion was due to a defect that existed at the time of the sale," and, consequently, found the plaintiff stated a claim under the Song-Beverly Act. See id. at 1308. In support of its conclusion, the Court of Appeal, without identifying the particular allegations made by the plaintiff as to the nature of the asserted engine defect, cited favorably to Moore v. Hubbard & Johnson Lumber Co., 149 Cal. App. 2d 236 (1957). Moore, in turn, involved lumber that, when sold, was infested with a particular type of beetle that "characteristic[ally] . . . eat[s] its way out of the wood to the surface leaving a hole in the wood," see id. at 238; under such circumstances, the Court of Appeal in Moore found the lumber "unusable and unsalable" from the date of the sale, even though the defect, i.e., the presence of the wood-eating beetles, was unknown to the purchaser at the time of the purchase, see id. at 240-41.

As courts examining Mexia and Moore have concluded, and this Court likewise finds, the principle set forth therein applies where the goods are not fit for their ordinary purpose from the outset, but is inapplicable where the goods perform as warranted during the statutorily provided period and thereafter fail to continue to so perform. See Grodzitsky v. American Honda Motor Co., 2013 WL 2631326, at *11 (C.D. Cal. June 12, 2013) (holding plaintiff's claim under Song-Beverly Act subject to dismissal where claim based on allegation mechanical part in vehicle's window assembly failed, causing windows to cease moving up and down, after expiration of statutorily provided period; finding Mexia and Moore inapplicable unless goods "unusable from the start," and plaintiff's windows "worked as they were supposed to for several years"); Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 847, 852-53 (N.D. Cal. 2012) (holding plaintiff failed to state claim under Song-Beverly Act based on allegation computer "malfunctioned" due to failure of "motherboard" after expiration of statutorily provided period; finding plaintiffs' reliance on Mexia unavailing given computer "functioned properly" during statutorily provided period); Marchante v. Sony Corp., 801 F. Supp. 2d 1013, 1021-22 (S.D. Cal. 2011) (holding Mexia limited to "defects

rendering the product unmerchantable from the outset" and thus inapplicable where plaintiffs alleged television began to malfunction "after several years" of use without incident); Hovsepian v. Apple, Inc., 2009 WL 2591445, at *1, *8 n.7 (N.D. Cal. August 21, 2009) (holding plaintiff failed to state claim under Song-Beverly Act where plaintiff alleged computer screens became "unusable" four months after expiration of statutorily provided period; finding Mexia and Moore inapplicable, given products in those cases were "unmerchantable from day one," whereas plaintiffs' computer screens "worked properly" during said period).

Accordingly, the Third Claim for Relief is subject to dismissal.

## CONCLUSION

For the reasons stated above, BMW's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the motion seeks dismissal of the Third Claim for Relief, the motion is GRANTED, and the Third Claim for Relief is hereby DISMISSED without leave to amend.

2. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated:  January 6, 2015

MAXINE M. CHESNEY
United States District Judge

9