

March 8, 2016

**VIA ECF**

Hon. Kandis A. Westmore
United States District Court
1301 Clay Street
Oakland, CA 94612

    Re:   *Sharma, et al. v. BMW NA*, No. CV-13-2274 (MMC)(KAW)
           Discovery Letter re: Design and Manufacturing Documents and Responses

Dear Judge Westmore:

### ATTESTATION

The parties have met and conferred extensively regarding this dispute, by exchanging position letters as well as meeting several times, in person and by phone, including lead counsel most recently on December 10, 2015, February 23, 2016 and March 8, 2016. We have fully complied with this Court's Standing Order and Section 9 of the Northern District's Guidelines for Professional Conduct.

KERSHAW, CUTTER & RATINOFF LLP          SQUIRE PATTON BOGGS LLP

/s/ *WILLIAM A. KERSHAW*                       /s/ *ERIC J. KNAPP*
WILLIAM A. KERSHAW                              ERIC J. KNAPP

Attorneys for Plaintiffs                              Attorneys for Defendant
Monita Sharma and Eric Anderson           BMW of North America, LLC

**<u>N.D. Cal. Civil Local Rule 5-1 Certification</u>**
    Pursuant to Northern District of California Civil Local Rule 5-1(i), the filing attorney hereby certifies that concurrence in the filing of the document has been obtained from each of the other signatories.

I.      **Plaintiffs' Statement of the Unresolved Dispute and Pertinent Factual Background**

The defects at issue in this case are rooted in the fundamental principle that water and electronics simply do not mix. Indeed, this combination is particularly troublesome when it arises in the trunk compartment of a moving vehicle. To fully and appropriately analyze the underlying defects, arising from the location of sensitive electronic components in the trunk compartments of class vehicles that are damaged by water intrusion,[1] Plaintiffs Monita Sharma and Eric Anderson ("Plaintiffs") must be able to review basic design, manufacturing, and testing documents for the vehicles. However, Defendant BMW of North America, LLC ("BMW NA") objects on the basis that this information is not within its possession, custody or control and resides squarely with its parent company, BMW AG. In doing so, BMW NA is obstructing discovery and erecting a fictional wall between it and its parent company.

The discovery requests at issue involve Plaintiffs' Requests for Production ("RFP") Nos. 1-11, 20, 21, 24, 26-29, 35, 42, 48, 49 and Interrogatory Nos. 6-11, 16, 18-20, and 22.[2]

II.     **Plaintiffs' Final Substantive Position and Proposed Compromise**

The requested design, manufacturing, and testing information is fundamental to Plaintiffs' ability to analyze and investigate the placement of electronic components in the trunk compartments of class vehicles. BMW NA responded to these requests in rote fashion by claiming that it has no design or manufacturing documents in its possession, custody or control (*see*, *e.g.*, Ex. C at Resp. to RFP No. 6) because it did not design or manufacture the vehicles. Rather, BMW NA describes itself in part as the "distributor and warrantor of putative class vehicles." (*See*, *e.g.*, *id.* at Resp. to RFP No. 1.) However, it is difficult to believe that BMW NA would or could carry out these responsibilities—including making decisions relating to warranty coverage, analyzing and determining warranty claims and providing assistance to BMW dealerships to address vehicle repairs—without any right or access to vehicle design, testing and manufacturing information. In fact, there is no impediment for BMW NA to access such information.

As an initial matter, BMW NA is a subsidiary of BMW AG and has control over and the ability to obtain design and manufacturing documents possessed by BMW AG. The Ninth Circuit defines "control" over documents of a third party or non-party as the "legal right to obtain documents upon demand." *In re Citric Acid Litig.,* 191 F.3d 1090, 1107 (9th Cir. 1999); *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2014 U.S. Dist. LEXIS 161037, at *4 (N.D. Cal. Nov. 16, 2014). This court previously compelled a subsidiary to produce documents possessed by a parent company where the subsidiary had control over the parent's documents (i.e., the legal right to obtain documents from the parent) in *Choice-Intersil Microsystems, Inc. v. Agere Systems, Inc.*, 224 F.R.D. 471 (N.D. Cal. 2004). In *Choice-Intersil Microsystems*, the court examined several factors in concluding that the subsidiary (Infineon NA) had control over the parent company's (Infineon AG) documents, including that: Infineon NA was a wholly-owned subsidiary of Infineon AG; the two companies shared relevant databases; and "upon demand, Infineon NA was able to obtain high-level documents from Infineon AG" concerning the key issue in plaintiff's case (i.e., the marketing of a chip used in wireless communications). *Id.* at 472-73.

BMW NA's claim that it has no design or manufacturing documents is belied by its own Rule 30(b)(6) witness, Johnny Thomas. Mr. Thomas testified that he "did a lot of technical

---

[1] BMW-designed X5 series vehicles (2000 through 2008), X3 series vehicles (2004 through 2010), and 5-series vehicles (2004 through 2010).

[2] Pursuant to Local Civil Rule 37-2, Plaintiffs' first sets of RFPs and Interrogatories are attached hereto as Exhibits A and B, respectively. BMW NA's responses and objections to Plaintiffs' first sets of RFPs and Interrogatories are attached hereto as Exhibits C and D, respectively.

research" to prepare for his deposition on electronic modules located in the low points of the class vehicle trunk compartment. (Ex. E (Thomas Dep. Tr.) at 10:20-11:10), including by reviewing: (1) BMW's "ISTA" database; (2) BMW's training manuals; and (3) BMW's parts catalogs. (*Id*. at 23:2-24:18.) He also confirmed that the ISTA database shows the configurations of electronic modules in class vehicle trunk compartments. (*Id*. at 24:19-25:25.)[3] As Mr. Thomas' testimony clearly demonstrates, not only does BMW NA have the ability to readily access responsive design and manufacturing documents, it has already accessed them.

Furthermore, testimony from BMW NA's initial Rule 30(b)(6) designee, Chabhinath Ramkissoon, a senior product engineer for BMW NA, revealed that BMW NA uses a shared database with BMW AG, called the PuMA system, which allows it to access BMW AG documents for addressing vehicle failures and defects. Mr. Ramkissoon testified that he frequently interacted with BMW AG as a PuMA specialist (Ex. F (Ramkissoon Dep. Tr.) at 19:10), a position in which he created consumer reports and reviewed cases (known as "PuMA cases") submitted by BMW dealerships that required technical assistance to resolve vehicle repair issues. (*Id.* at 13:25-15:9.) Mr. Ramkissoon testified that he submits PuMA reports to BMW AG for further analysis when "there is a growing trend of a particular failure in a vehicle." (*Id*. at 19:24-20:3.) It is BMW NA's "procedure" and "process" to seek technical assistance from BMW AG because "[t]hey are the engineers and the developers so they are the ones that know the system." (*Id*. at 20:4-20.)

In fact, Mr. Ramkissoon, was specifically trained and instructed to submit PuMA reports to BMW AG upon receiving PuMA cases involving the same complaints. (*Id*. at 21:12-23:1.) He testified that PuMA reports are submitted to BMW AG through a shared computer network (*id*. at 23:16-24:8) and sent to his "counterpart in Munich." (*Id*. at 28:11-18.) He directly communicates with that group, called "BP-41," online and via email. (*Id*. at 28:19-30:12.) In response to these reports, BMW AG provides him with investigation updates, requests for additional information from dealerships, and sometimes solutions on how to fix the vehicle. (*Id*. at 31:25-33:4.)[4]

Mr. Ramkissoon testified that he is not aware of any restrictions or limitations on the information he can request from BMW AG. (*Id.* at 35:13-36:6.) He also testified that he has worked on PuMA cases involving water intrusion in the trunk compartments of the class vehicles and admitted that BMW NA service information bulletins ("SIBs") can be issued as a result of BMW AG-directed PuMA measures. In fact, he admitted that it was rare that SIBs were *not* issued as a result of PuMA measures. (*Id.* at 64:13-23; 109:9-110:3.)

Like the plaintiffs in *Choice-Intersil Microsystems*, BMW NA has the legal right to obtain and control over BMW AG design and manufacturing documents. BMW NA is a wholly-owned subsidiary of BMW AG and both entities exchange information through a shared database (the PuMA system). BMW NA employees request and obtain high-level design/manufacturing information from BMW AG related to product defects, PuMA cases, and SIBs based on BMW AG PuMA measures. Further, BMW NA employees admittedly receive instructions and repair

---

[3] The fact that BMW NA produced a Rule 30(b)(6) witness on November 19, 2015 who discussed this subject does not excuse its failure to provide relevant and responsive documents and information over the course of discovery. Indeed, having this information earlier in the discovery period—as opposed to near the end of it—would have permitted Plaintiffs to supplement and tailor their discovery requests based on relevant design, manufacturing and testing information. Moreover, having such information in advance of the aforementioned deposition would have significantly improved Plaintiffs' ability to examine BMW NA's Rule 30(b)(6) designee.

[4] BP-41 also creates global "PuMA measures" to identify specific issues that "may be seen on the market." (Ex. F at 53:20-54:5.) PuMA measures are available on the PuMA system, where BMW NA's "quality and analysis reporting team" may retrieve them, place them into a report, and distribute the information via email to BMW NA employees. (*Id*. at 54:6-56:10.)

information from BMW AG as a "function of the job." (Ex. F (Ramkissoon Dep.) at 20:18-20.)[5] BMW NA has given no indication through discovery or otherwise that it is unable to obtain class vehicle design or manufacturing documents from its parent company.

Plaintiffs' discovery requests satisfy proportionality under Rule 26(b)(1). They are fundamental to Plaintiffs' allegations regarding the defective location of sensitive electronic components in class vehicle trunk compartments and the resulting damage to electronic components due to water intrusion. Furthermore, as described above, BMW NA has access to design and manufacturing information for the class vehicles in part through shared systems, email, and direct contact with counterparts at BMW AG. Given BMW NA's resources and access to this information from BMW AG and elsewhere, it would involve minimal expense or burden for it to respond to the discovery requests and interrogatories at issue.

As a proposed compromise to the parties' discovery dispute, Plaintiffs have offered to *waive interrogatory responses at this time* and significantly limit its document requests to only the following model years: (1) 2003-2004 and 2008 X5s, (2) 2005 X3s, and (3) 2006-2008 and 2010 5-Series. Such a proposal limits the requests to roughly *one-third (1/3) of the model years at issue in the case*. Plaintiffs' proposal is contingent on BMW NA's agreement to produce documents and provide the requested interrogatory responses as to all class vehicles if the class is certified. BMW NA rejected Plaintiffs' proposal in its entirety.

### III. BMW NA's Statement of the Unresolved Dispute and Pertinent Factual Background

Judge Chesney referred to this Court the preliminary question of whether "good cause has been shown for additional discovery" (Order, Dkt. 122), but plaintiffs fail to demonstrate good cause. The Ninth Circuit and Judge Chesney have held that plaintiffs must show **overall** diligence in prosecuting the litigation: "If [the moving] party was not diligent, the inquiry should end," and a motion to modify a Scheduling Order must be denied. *Crosthwaite v. Celik Eng'g Corp.*, 2006 WL 1050157, at *1 (N.D. Cal. Apr. 20, 2006) (Chesney, J.) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). BMW NA has detailed plaintiffs' lack of diligence and failure to show good cause, Dkt. 121, which plaintiffs do not even argue, much less prove. The Court should deny their letter brief on that basis alone.

The facts and the law confirm that BMW NA does not have the legal right to demand "design, testing, and manufacturing" documents from BMW AG, let alone *any* documents. In fact, BMW NA asked BMW AG if it would voluntarily produce the documents plaintiffs requested, and it declined. Controlling precedent rejects what plaintiffs attempt to do here specifically as to BMW NA, as well as other distributors for foreign auto makers. *Ehrlich v. BMW of N. Am., LLC*, 2011 WL 3489105, at *1 (C.D. Cal. May 2, 2011) ("Plaintiff argues, it seems, that, based on the inherent relationship between the two companies, BMW NA must have access to these documents. This theory has been rejected by the Ninth Circuit and is rejected here."); *Seifi v. Mercedes-Benz U.S.A., LLC,* 2014 WL 7187111, at *3 (N.D. Cal. Dec. 16, 2014) (Corley, J.) ("This falls well below the showing necessary to establish legal control: Plaintiffs must show that Defendant has the legal right to compel production of the documents from [parent/manufacturer] Daimler") (*aff'd*, 12-cv-05493 Dkt. 136 (Henderson, J.) (N.D. Cal. Jan. 7, 2015)). Plaintiffs point to no evidence giving a legal right to BMW NA to obtain such materials from BMW AG. Unable to cite any facts, plaintiffs misrepresent the record, pretending simple repair materials are "high-level design

---

[5] Johnny Thomas also testified as a BMW NA technical service engineer and previous warranty engineer that BMW NA provided him with an internal phone list of BMW AG contacts for determining whether BMW AG was investigating or had prescribed approaches for addressing problems that BMW NA was experiencing with vehicle parts. (*See*, *e.g.*, Ex. G (Thomas Dep. Tr.) at 85:4-24; 87:4-10.) He testified that this list consisted of a "spreadsheet that said '[f]or this component, call this person; these are your counter parts [*sic*] in Germany.'" (*Id.* at 87:7-10.)

and manufacturing documents" and ultimately assert that "it is difficult to believe that BMW NA would or could carry out these responsibilities [as a distributor and warrantor] without any right or ability" to access such materials. Again, that very type of unsupported supposition has been rejected. *Ehrlich*, 2011 WL 3489105, at *1.

Plaintiffs' counsel have had multiple lawsuits against BMW NA and know that it is the distributor of the vehicles with no right to demand documents from the designer and manufacturer, BMW AG. And they were reminded of the fact nearly a year ago in BMW NA's discovery responses. Plaintiffs did not seek to add BMW AG as a party[6] to this lawsuit or seek third-party discovery from it under the Hague Convention on the Taking of Evidence Abroad. Instead and notwithstanding clear precedent, plaintiffs tried a last minute motion in effort to do an end-run of Judge Chesney's scheduling order (the deadline to add parties has long passed) and the Hague Convention respecting the international sovereignty of nations.

    A.    **Unable to Supply Actual Facts, Plaintiffs Misrepresent Common BMW NA Service Information as BMW AG Design and Manufacturing Materials**

Plaintiffs refer to materials (*e.g.*, "ISTA," a parts catalogue and training manuals) reviewed by Mr. Thomas, as "design and manufacturing" documents. *Supra*. This is false. ISTA is used by dealer technicians to get information from vehicle electronics in the shop and to obtain repair instructions (in fact, plaintiffs *were* provided with printouts from ISTA nearly a year ago, showing the different locations of the modules at issue in the case as well as module readouts from their own vehicles). The parts catalogue is used by technicians to order parts, and the training manuals are provided to them when they are taught how to repair BMW vehicles.

Most importantly, ***nothing*** discussed in the BMW NA PMK depositions related to "design, testing or manufacturing" of BMW vehicles or "request[ing] and obtain[ing] high-level design/manufacturing information", rather all interactions came in the context of fixing cars. Plaintiffs also misrepresent the "PuMA" system, as the testimony relates only to BMW NA reporting technical issues to BMW AG, and receiving service measures to fix cars. Nothing in the testimony indicates BMW NA could access whatever BMW AG information it wanted, as opposed to only what BMW AG provided it with. That certainly does not establish that BMW NA had a legal right to demand "***design, testing or manufacturing***" documents.

    B.    **Plaintiffs Point to No Evidence That BMW NA Has a Legal Right to Demand Anything from BMW AG**

None of the testimony cited by plaintiffs shows that BMW NA has the "legal right" to obtain information from BMW AG *of any kind*. Nowhere did the PMKs testify that BMW NA had a legal right to obtain *any* information from BMW AG – or even that they thought they did.[7] If anything, they testified the opposite:

> Q You've testified that you've never gotten the sense that [BMW AG was] unwilling to give you information. Do you remember testifying to that?

---

[6] Tellingly, plaintiffs filed a copy-cat class action in another jurisdiction where they named BMW AG as a party.

[7] As a matter of fact, neither PMK knew who the persons they corresponded with worked for (e.g., BMW AG versus another subsidiary or contracted company). E.g., Ex. F, Ramkissoon Dep. at 29:7-12; Ex. G, Thomas July 21, 2015 Dep. at 83:11-17. Even if it is assumed for the purposes of this motion that they were employed by BMW AG, it does not change the result.

> A  I remember testifying that they were – you know, I could talk to them.  If I was able to reach them, I could talk to them any time.  So in that regard, I could pick up the phone; if they answered the phone, you know, everything was real cordial.  But if I requested something and didn't get it, there was no recourse.  I didn't have any recourse.

Ex. G, Thomas July 21, 2015 Dep. at 220:10-21.  Similarly, they misrepresent testimony from Mr. Ramkissoon, who testified that he did not know if there were restrictions on what he could request.  *Supra*, citing Ex. F at 35:13-36:6.  But that he was "not aware" of restrictions is not evidence that BMW AG *had* to respond or that BMW NA had a legal right to it in the first place.  *See Seifi*, 2014 WL 7187111, at *3 ("Plaintiff also suggests that because Defendant has produced some Daimler AG documents it must have access to all such documents and databases. This falls well below the showing necessary to establish legal control:  Plaintiffs must show that Defendant has the legal right to compel production of the documents from Daimler.").  Last, plaintiffs make this assertion without any citation:  "BMW NA employees request and obtain high-level design/manufacturing documents and information from BMW AG related to product defects."  Plaintiffs cannot carry their burden of proof through unsupported (and false) assertions.

### IV.    BMW NA's Final Substantive Position

Plaintiffs' motion must be denied because they have failed to demonstrate overall diligence and good cause to seek further discovery.  Dkt. No. 122.  Regardless, *Ehrlich* is plain:  "[T]he Court is being asked to order BMW NA to produce documents it does not possess from a company in Germany that the Court does not have jurisdiction over and that has already refused to produce them.  Granting Plaintiff's request under these circumstances would be a futile gesture." 2011 WL 3489105, at *1 (citing *Citric Acid*, 191 F.3d at 1108).  BMW NA (still) cannot provide documents it does not have actual control of, nor has the legal right to demand.

Plaintiffs' unsupported speculation and theories are insufficient, as a matter of law.  *Citric Acid*, 191 F.3d at 1108 ("[P]roof of theoretical control is insufficient; a showing of actual control is required."); *Micron Tech., Inc. v. Tessera, Inc.*, 2006 WL 1646133, at *2 (N.D. Cal. June 14, 2006) (Where "there is no mechanism for [the party] to compel the non-party] to produce those documents," "control" does not exist because the other "could legally continue to refuse to turn over [the] documents."); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 2013 WL 1767960, at *2 (N.D. Cal. Apr. 15, 2013) (courts in the Ninth Circuit require proof that the party has the means to "legally compel [the non-party] to produce the documents").

Courts addressing the "legal right to demand" issue have required clear and unambiguous language creating such a right, because the Ninth Circuit's test in *Citric Acid* prohibits a finding of "control" if there is "no ***certain*** way of getting [the] documents" at issue.  191 F.3d at 1108 (emphasis added).  Here, plaintiffs cite no evidence (because there is none) of clear and unambiguous language conferring such a legal right on BMW NA.  Plaintiffs' citation to *Choice-Intersil* is inapposite because, unlike here, there was evidence that the domestic entity had the right to obtain the pertinent documents "***upon demand***" from the foreign company.  224 F.R.D. at 472.  (*Choice Intersil* is also distinguishable as it does not appear to comport with (or even mention) the Ninth Circuit's *Citric Acid* decision.)  Plaintiffs' letter request should be denied.

### V.    BMW NA's Proposed Compromise

BMW NA does not have the requested BMW AG documents, does not have the legal right to obtain such documents, and also has informed plaintiffs and the Court that BMW AG has refused BMW NA's requests that the documents at issue be turned over.  As BMW NA has nothing to produce (and been rebuffed by BMW AG) it has nothing to offer in "compromise."

Respectfully submitted,

SQUIRE PATTON BOGGS LLP

*/s/ Eric J. Knapp*
_____
Eric J. Knapp
*Attorneys for Defendant*
*BMW of North America, LLC*

Respectfully submitted,

KERSHAW, CUTTER & RATINOFF LLP

*/s/ William A. Kershaw*
_____
William A. Kershaw

WEXLER WALLACE LLP
Edward A. Wallace
Amy E. Keller

THE LAW OFFICES OF JOSEPH R. SANTOLI
Joseph R. Santoli

THE LAW OFFICES OF STEPHEN M. HARRIS, P.C.
Stephen M. Harris

THE LAW OFFICES OF ROBERT L. STARR
Robert L. Starr

*Attorneys for Plaintiffs*
*Monita Sharma and Eric Anderson*

**N.D. Cal. Civil Local Rule 5-1 Certification**

　　　Pursuant to Northern District of California Civil Local Rule 5-1(i), the filing attorney hereby certifies that concurrence in the filing of the document has been obtained from each of the other signatories.