UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONITA SHARMA, et al.,<br>    Plaintiffs,<br>v.<br>BMW OF NORTH AMERICA LLC,<br>    Defendant. | Case No. 13-cv-02274-MMC (KAW)<br><br>**ORDER REGARDING DISCOVERY LETTER BRIEFS**<br>Re: Dkt. Nos. 130, 134, 135 |

The parties to this putative class action have filed three joint discovery letter briefs, which have been referred to the undersigned for resolution. The Court deems the matter suitable for disposition without hearing. Having reviewed the papers filed by the parties and the relevant legal authority, the Court resolves the parties' discovery disputes as set forth below.

## I. BACKGROUND

Plaintiffs Monita Sharma ("Sharma") and Eric Anderson ("Anderson") allege that they each purchased a vehicle "designed, manufactured, distributed [and] sold by BMW of North America LLC [('BMW NA')], and that their respective vehicles have a "design defect." (3d Am. Class Action Complaint ("TAC") ¶ 1, Dkt. No. 75.) Plaintiffs specifically allege that their vehicles "were designed so that certain vital electrical components known as SDARS, RDC, and PDC Modules, are located in the lowest part of the vehicles' trunk," where "they are especially prone to water damage that can be caused through the normal and ordinary use of the vehicle." (*Id.*) Plaintiffs further assert that their vehicles "were also designed so that drainage tubes used to drain water away from the vehicles' sun roofs are located directly next to the vital electrical equipment that is located in the bottom of the trunk," that the drains "were designed in such a way that they are prone to become clogged with dirt, debris, leaves, and other naturally-occurring

1  materials," that "[w]hen these tubes become clogged, they come loose or leak into the trunks of the

2  vehicles," and that the leaks "eventually flood the trunks of the vehicles, caus[ing] the vital

3  electrical components contained at the bottom of the vehicles' trunks to short." (*Id.* ¶ 2.)

4  Sharma purchased her 2008 BMW X5 in May 2009. (*Id.* ¶ 9.) Anderson purchased his

5  E60 5301 in March 2010. (*Id.* ¶ 19.) Both of them claim to have experienced problems with their

6  vehicles' electrical components as a result of water intrusion, which they paid to have repaired by a

7  BMW dealership. (*Id.* ¶¶ 13-18, 24-26.) Plaintiffs allege that although BMW was aware of the

8  alleged defect prior to the dates on which plaintiffs purchased their respective vehicles, BMW did

9  not advise them of the defect. (*Id.* ¶¶ 4, 6, 49-56.)

10  On May 17, 2013, Plaintiffs commenced this action on behalf of themselves and all

11  similarly situated California residents who purchased or leased certain defective BMW vehicles

12  sold in the United States by BMW NA. (Compl., Dkt. No. 1.) In the operative complaint,

13  Plaintiffs assert three claims for relief, one for violations of the Consumers Legal Remedies Act

14  ("CLRA"), California Civil Code sections 1750-1784, one for violations of California Business

15  and Professions Code section 17200, and one for breach of implied warranty of merchantability

16  under the Song-Beverly Consumer Warranty Act, California Civil Code sections 1790-1795.8.

17  (TAC ¶¶ 87-98, 99-106, 107-119.)

18  On November 20, 2015, Plaintiffs filed a motion to compel and an administrative motion

19  to file documents under seal. (Admin. Mot. to Seal, Dkt. No. 106, Pls.' Mot. to Compel, Dkt. No.

20  107.) The matter was referred to the undersigned, and the parties were directed to file a joint letter

21  after meeting and conferring. (Order of Reference, Dkt. No. 108.) The undersigned, therefore,

22  terminated Plaintiffs' motions, and consistent with the presiding judge's order, instructed the

23  parties to file a joint letter after meeting and conferring. (Dec. 3, 2015 Order, Dkt. No. 109.)

24  On December 16, 2015, the parties filed two discovery letter briefs. (Dkt. Nos. 110, 111.)

25  The parties filed a third discovery letter brief on December 17, 2015. (Dkt. No. 112.) The Court

26  terminated the filings because the Plaintiffs had not complied with the Court's General Standing

27  Order. (Jan. 12, 2016 Order, Dkt. No. 114.) The Court noted that discovery closed in this case on

28  December 18, 2015, the parties would have to seek leave from that deadline from the presiding

judge if any additional discovery were necessary. (*Id.*)

On January 28, 2016, Plaintiffs filed an ex parte application to extend discovery and class certification deadlines. (Pls.' App., Dkt. No. 188.) On February 2, 2016, the presiding judge issued an order, stating, in pertinent part:

> To the extent the application seeks an order extending the December 18, 2015, deadline to complete fact discovery, the application is hereby REFERRED to the Honorable Kandis A. Westmore, to whom all discovery disputes have been referred. In the event the parties file a joint letter or letters in conformity with the directions in Magistrate Judge Westmore's order of January 12, 2016, and if Magistrate Judge Westmore finds good cause has been shown for additional discovery, she may, as she deems appropriate, extend the fact discovery deadline to allow completion of any such additional discovery.

(Feb. 2, 2016, Order, Dkt. No. 122.) On February 29, 2016, the parties filed a joint discovery letter brief regarding BMW NA's retention policies. (Dkt. No. 130.) The parties filed two additional joint letter briefs on March 8, 2016.[1] (Dkt. Nos. 134, 135.)

## II. LEGAL STANDARD

Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"A party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated documents or electronically stored information . . . or any designated tangible things." Fed. R. Civ. P. 34(a).

///

---

[1] Because the joint letters concerns discovery disputes Plaintiffs raised prior to the fact discovery cut-off, the issues were timely raised. Good cause, however, must be shown if Plaintiffs pursue any additional discovery in this case.

3

### III. DISCUSSION

#### A. Document retention policies

The parties' first joint letter concerns Plaintiffs' request for BMW NA's "[d]ocument retention policies in effect from 1998 to present[,]"[2] served on March 16, 2015. (Dkt. No. 130, Ex. A, RFP No. 32.) Plaintiffs argue that the requested document retention policies "are relevant and necessary for Plaintiffs to determine whether any spoliation has occurred, whether any relevant documents and information have been withheld or otherwise lost, as well as what information is available to support their claims regarding the alleged defects in the class vehicles." (*Id.* at 2.)

In its responses, dated May 4, 2015, BMW NA objected to the request on the grounds that (1) "it is argumentative and assumes that documents have been destroyed pursuant to any document retention policy[,] (2) "the terms 'document retention policies' . . . are vague, ambiguous, vastly overbroad, unduly burdensome, and seek information wholly unrelated to the alleged defect, relevant parts, and claims asserted in this case," and (3) the request is "improper to the extent it could be construed to seek information covered by the attorney-client privilege, the attorney work product doctrine, or any other judicially recognized privilege, protection or rights of confidentiality." (*Id.*, Ex. B.)

In the parties' joint letter, BMW NA argues that its document retention policies are irrelevant, that Plaintiffs failed to meet and confer about this discovery request until the close of fact discovery, and that the instant joint letter should be viewed with suspicion given Plaintiffs' delay. (*Id.* at 4.) In advancing these arguments, BMW NA relies entirely on *PersonalWeb Techs., LLC v. Google, Inc.*, No. C13-01317 EJD (HRL) 2014 WL 4088201, at *4 (N.D. Cal. Aug. 19, 2014). That case, however, is distinguishable. There, the plaintiff sought an order compelling production of a defendant's "'document retention policies and litigation hold notices issued in th[e] case, or documents and information sufficient to identify the content of [the defendant's] litigation hold notices, the dates the notices were circulated and the recipients of such notices, and what

---

[2] The proposed class vehicles are as follows: 2000-2008 X5 series vehicles, 2004-2010 X3 series vehicles, and 2004-2010 5-series vehicles. Dkt. No. 130 n.1.

4

categories of information [the defendant's] employees were instructed to preserve and collect.'" *Id.* at * 3. That request was much broader than the one at issue here, which Plaintiffs have now proposed to narrow to include only the document retention policy currently in effect, the policy in effect in 2008, and the policy in effect at the time this case was filed in 2013. (*See* Dkt. No. 130 at 2.) Additionally, in *PersonalWeb*, the document retention policy at issue had been produced, and the plaintiff had even inquired about it while deposing the project manager for the defendant's electronic discovery group, which had occurred more than one year before the plaintiff revisited the dispute. *PersonalWeb Techs.*, 2014 WL 4088201, at *3.

To the extent BMW NA relies on *PersonalWeb* to establish that Plaintiffs' request for document retention policies was brought in bad faith, the case is unpersuasive. There, the plaintiff's motion was broader than the discovery request on which it was purportedly based, the plaintiff waited more than one year before following-up on the outstanding discovery, and the plaintiff had committed spoliation by failing to timely institute its litigation hold. *PersonalWeb Techs.*, 2014 WL 4088201, at *3-4. On these facts, the Court "c[ould] not help but think that the motivation for [the plaintiff's] renewed interest [wa]s retaliatory in nature, as [the defendant] implie[d]." *Id.* at *4.

No such facts are present here. As of the parties' initial case management conference statement, filed on January 16, 2015, no discovery had taken place in this case. (Joint CMC Stmt. at 5, Dkt. No. 88.) Plaintiffs served their First Set of Document Requests on March 16, 2015, and Defendants' objections are dated May 4, 2015. (Dkt. No. 130 Exs. A & B.) While Plaintiffs should have perhaps sought judicial intervention earlier than they did, and met and conferred more substantially than they did, this Court does not find that in this case, waiting four months[3] to re-visit the issue gives rise to a suspicion of bad faith or improper motive that would justify denying

---

[3] BMW notes that "Plaintiffs dropped the issue last summer (as their own timeline shows)." Dkt. No. 130 at 4. Plaintiffs state that they met and conferred with BMW in June and July 2015 and attempted to discuss the issue again in October 2015. *Id.* at 1. Even if the Court were to discount Plaintiffs' statements that they attempted to discuss the issue with BMW in October 2015, at worst, Plaintiffs "dropped the issue" for four months before filing their motion to compel in November 2015. *See id.*

5

Plaintiffs' request for BMW NA's document retention policies.

Here, that information is relevant. The document retention policies may help Plaintiffs determine the universe of responsive documents and evaluate any gaps in document production. Requiring production of this information is also proportional to the needs of this case. BMW NA does not refute Plaintiffs' assertion that the document retention policies they seek are contained within a modest number of pages, and in light of this, the burden or expense of producing this information is likely minimal, while the benefit of such information would be substantial. Knowledge of BMW NA's document retention policies will allow Plaintiffs to assess the company's document production, determine whether any relevant documents are lacking, and evaluate whether additional discovery is necessary in this case.[4]

Furthermore, BMW NA's remaining objections are unavailing. None justifies withholding the information sought. Plaintiffs' request is not argumentative. Nor does it assume that documents have been destroyed pursuant to any document policy. As Plaintiffs explain, production of BMW NA's document retention policies would help establish the universe of documents that have been preserved and are available. The terms "document retention policies" are also not vague, ambiguous, or vastly overbroad, especially given that Plaintiffs are now willing to compromise and seek only the current document retention policy and those in effect in 2008 and 2013. Nor are BMW NA's purported assertions of privilege a basis for withholding its document retention policies, as the company has not, as is required by this Court's General Standing Order, provided a privilege log. *See* Judge Westmore's General Standing Order ¶ 20 ("If a party withholds information that is responsive to a discovery request by claiming that it is privileged or otherwise protected from discovery, that party shall promptly prepare and provide a privilege log that is sufficiently detailed and informative for the opposing party to assess whether a document's designation as privileged is justified."). Moreover, to the extent confidentiality is a concern, the stipulated protective order in this case, Dkt. No. 101, is sufficient to address the parties' needs.

---

[4] That the Court has ruled on the parties' discovery disputes does not mean that discovery will be re-opened in the event Plaintiffs decide to pursue this course of action.

**B. Design, manufacturing, and testing documents**

The parties' second joint letter concerns BMW NA's responses to Plaintiffs' requests for production and interrogatories relating to design, manufacturing, and testing documents.[5] (Dkt. No. 134.) BMW NA objected to the requests, claiming that the information sought is not within its possession, custody, or control, that it belongs to its parent company, BMW AG, and that it does not have the legal right to demand design, testing, and manufacturing documents from BMW AG. (Dkt. No. 134 at 3.)

A subsidiary is required to produce documents from its parent company where the subsidiary has legal control over the documents. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). "'The party seeking the documents bears the burden of demonstrating that the responding party exercises such control.'" *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12-cv-2582 CW (JSC), 2013 WL 1767960, at * 1 (N.D. Cal. Apr. 15, 2013) (quoting *Doe v. AT&T W. Disability Benefits Prg.*, No. 11-4603, 2012 WL 1669882, at *2 (N.D. Cal. May 14, 2012)). "'Control is defined as the legal right to obtain documents upon demand.'" *In re Citric Acid Litig.*, 191 F.3d at 1107-08 (quoting *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)).

Here, Plaintiffs argue that BMW NA has such control over the documents of its corporate parent, BMW AG. In advancing that argument, Plaintiffs rely on the deposition testimony of BMW NA's 30(b)(6) witness, Johnny Thomas ("Thomas"), and BMW NA's initial Rule 30(b)(6) designee, Chabhinath Ramkissoon ("Ramkissoon"). (Dkt. No. 134 at 1-2.)

Thomas testified that BMW NA has diagnostic equipment, called ISTA, parts catalogs, and training manuals. (Thomas Dep. 23:2-24:18, Dkt. No. 134-5.) He specifically testified:

> If you gave me specific information on the vehicle or the VIN and you tell me what system you wanted to look up, I could look that up. So if we wanted to find out where is [*sic*] the powers and the grounds going to a particular control module or sensor, you have access to that.

---

[5] Plaintiffs identify the following discovery requests as the ones at issue: Plaintiffs' Requests for Production Nos. 1-11, 20, 21, 24, 26-29, 35, 42, 48, 49 and Interrogatory Nos. 6-11, 16, 18-20, and 22. Dkt. No. 134 at 1 (footnote omitted).

7

(*Id.* 25:20-25.)

Ramkissoon testified that "[a] PuMA case is submitted when the dealer is looking for assistance in resolving the issue that the customer has with the vehicle." (Ramkissoon Dep. 15:7-9, Dkt. No. 134-6.) Before Ramkissoon worked as a customer relations representative, he worked as a PuMA specialist, reviewing PuMA cases as they were submitted by the dealership. (*Id.* 13:25-14:7.) Ramkissoon testified that he would submit a PuMA report to BMW AG "[f]or further analysis if [he] were to think there is a growing trend of a particular failure in a vehicle." (*Id.* 20:1-3.) "[T]he PuMA system is a platform that [is] share[d] with the dealerships," and it "is accessible to BMW AG." (*Id.* 23:16-24:8.) Ramkissoon became familiar with PuMA cases regarding water in the trunk area because such cases were "[f]orwarded or escalated to [him] by the PuMA hotline or the field personnel, the technical service engineer." (*Id.* 64:18-23.)

Plaintiffs argue that "BMW NA has given no indication through discovery or otherwise that it is unable to obtain class vehicle design or manufacturing documents from its parent company." (Dkt. No. 134 at 3.) It is, however, Plaintiffs' burden to establish that BMW NA has legal control over the information sought. *See Ubiquiti Networks, Inc*, 2013 WL 1767960, at * 1. To that end, the deposition testimony on which Plaintiffs rely falls short. That testimony does not establish that BMW NA has a legal right to obtain the information sought. At best, the testimony establishes that on occasion, BMW AG has access to certain information, can make requests for it, and often receives it from BMW AG.

As BMW NA points out, both Thomas and Ramkissoon could not state with certainty that they would be provided with any information they requested. Thomas testified:

```
10 Q You've testified that you've never gotten the
11 sense that they were unwilling to give you
12 information. Do you remember testifying to that?
13 A I remember testifying that they were -- you
14 know, I could talk to them. If I was able to reach
15 them, I could talk to them any time.
16 Q Right.
17 A So in that regard, I could pick up the phone;
18 if they answered the phone, you know, everything was
19 real cordial. But if I requested something and didn't
20 get it, there was no recourse. I didn't have any
21 recourse.
```

8

(Thomas Dep. 220:10-21, Dkt. No. 134-7.)  Ramkissoon similarly testified:

> Q. In your interaction with BP-41, has
> 14 anybody ever told you there are certain things you
> 15 can't ask them?
> 16 MR. CARR: Objection; vague and
> 17 ambiguous.
> 18 A. Not that I know of.
> 19 Q. So basically if you have numerous
> 20 PuMA cases that are coming in and then you submit a
> 21 PuMA report in order to seek the assistance from
> 22 BP-41, to your knowledge there is no restraint on
> 23 the degree of questions you can ask them or
> 24 information you can provide them, correct?
> 25 MR. CARR: Objection; calls for
> 1 speculation. You can answer factually, if you know.
> 2 A. I don't know.
> 3 Q. No restrictions you're aware of,
> 4 correct?
> 5 MR. CARR: The same objection.
> 6 A. Yeah, not that I'm aware of.

(Ramkissoon Dep. 35:13-36:6.)

Having no recourse if BMW AG declines a request for information or not being aware of restrictions on information sharing does not support the conclusion that BMW NA has control over the information Plaintiffs seek here.  Plaintiffs' reliance on *Choice-Intersil Microsystems, Inc. v. Agere Systems, Inc.*, 224 F.R.D. 471 (N.D. Cal. 2004) is thus misplaced.  There, the court found that "upon demand, Infineon NA was able to obtain high-level documents from Infineon AG related to the marketing of the chip." *Id.* at 472.  Plaintiffs have offered no basis upon which the Court may make such a finding here.  *See Micron Tech., Inc. v. Tessera, Inc.*, No C06-80096 MISC JW (HRL), 2006 WL 1646133, at \*2 (N.D. Cal. June 14, 2006) (evidence that companies were closely related and had some management in company was insufficient under the Ninth Circuit's "legal" right test).  In fact, that would be at odds with BMW NA's representation that BMW AG declined its request to produce the documents Plaintiffs seek.  *See Ehrlich v. BMW of North America, LLC*, No. CV 10-1151-ABC (PJWx), 2011 WL 3489105, at \* 2 (N.D. Cal. May 2, 2011) (denying requested discovery where BMW NA provided a declaration stating, among other things, that it requested documents from BMW AG, and BMW AG declined to provide most of

them).[6]

Accordingly, Plaintiffs' request for design, manufacturing, and testing documents is DENIED.

### C. Limited discovery responses

The parties' third joint letter concerns BMW NA's "limited discovery responses."[7] (Dkt. No. 135.) Plaintiffs assert that BMW has improperly limited its discovery responses and deposition testimony to three electronic components in the vehicles' trunk compartment—the SDARS, RDC, and PDC—though the allegations in the complaint concern "SDARS, RDC, and PDC Modules, among other modules and control units." (*Id.* at 2.)

In the propounded discovery, Plaintiffs define the term "Electronic Component Parts" as:

> Includ[ing], but [] not limited to, the Micro Power Module ('MPM'), the Park Distance Control ('PDC'), the Multi-Audio System Controller ('M-ASK'), the Car Communication Computer ('CCC'), the Control Information Display ('CID'), the Telematrics Control Unit ('TCU'), the HiFi LOGIC7 System, the Tire Pressure Monitor ('RDC') and/or Satellite Radio Receiver ('SDARS'), as those terms are used in the Service Bulletin SI B 61 13 06, General Electrical Systems, issued by BMW NA.

(*Id.*) Plaintiffs assert that:

> Discovery concerning electronic components in the low points of the class vehicle trunk compartments must be examined to properly analyze, for example: how the electronic systems in class vehicles operate; how the specific electronic components in the trunk compartment function and are interrelated; and how water accumulation and intrusion impacts and damages these systems and components.

(*Id.* at 3.)

BMW NA contends that neither plaintiff experienced a safety issue from a malfunction of the SDARS, PDC, and RDC modules, or any other modules. (*Id.* at 4.) Plaintiffs do not address this in the joint letter. (*Id.* at 4.) Nor do Plaintiffs address BMW NA's statement that rather than respond to requests to identify the specific modules at issue, Plaintiffs instead "produced a 160

---

[6] The Court notes that in this case, BMW NA has made a similar statement in a joint letter, not in a supporting declaration. If Plaintiffs request such a declaration, BMW NA shall provide it.

[7] Plaintiffs specifically take issue with BMW's responses to Request for Production Nos. 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 20, 21, 22, 23, 24, 25, 27, 28, 29 and 48 and Interrogatory Nos. 3, 6, 7, 9, 15, 16, 17, 18, 19, 20, and 22. Dkt. No. 135 at 1 n.2.

page manual reflecting thousands of components located everywhere in the vehicles . . . ." (*Id.* at 4.)

BMW NA argues that "[a] vague reference to 'other modules' in paragraph 35 of the TAC does not allow limitless expansion of discovery, especially when they promised to identify modules they genuinely contend are at issue—and reneged on it." (*Id.* at 5.) Despite Plaintiffs' reference to BMW NA's service bulletin in the operative complaint, the Court agrees. Even assuming that discovery on components not located in Plaintiffs' vehicles is relevant, allowing the overbroad discovery Plaintiffs seek here would not be proportional to the needs of the case.

Plaintiffs' proposed compromise—waiving interrogatory responses at this time and limiting its document requests to 1/3 of the model years at issue—does not solve the underlying problem. Plaintiffs have not sufficiently defined the term electronic components in the propounded discovery, and they have declined BMW's requests to specifically identify certain electronic components. In light of this, Plaintiffs' statement that "it would involve minimal expense or burden for [BMW NA] to provide discovery responses that are not limited simply to three particular modules" is unfounded. (*See* Dkt. No. 135.)

Moreover, in Plaintiffs' own words, they "allege that the class vehicles at issue in this case are equipped with a uniform defect such that sensitive electronic components are located in the lowest parts of the trunk compartment where they become damaged by water or moisture intrusion." (Dkt. No. 135 at 1 (footnote omitted).) BMW states: Plaintiffs "cite a service bulletin attached to the TAC, which mentions other modules. But with one exception, none of them are located in the trunk or cargo area of the vehicles much less at the lowest point (whatever that means)." (*Id.* at 4-5.)

In light of Plaintiffs' own formulation of the allegations in the operative complaint and BMW NA's statement, BMW NA shall supplement its discovery responses as to the one module mentioned in the service bulletin that is located in the trunk or cargo area of the vehicles if that module is part of any of the proposed class vehicles. It shall, in its responses, also state that the remaining modules referenced in the service bulletin are not located in that area. As to the other unspecified and innumerable items to which Plaintiffs' definition of "Electronic Component Parts"

11

might "include but is not limited to," Plaintiffs have failed to show that information concerning these items would be both relevant and proportional under Rule 26(b).

Accordingly, Plaintiffs' request for additional information regarding electronic components is DENIED IN PART AND GRANTED IN PART. BMW NA shall provide supplemental responses within 21 days.

## IV. CONCLUSION

Based on the foregoing, BMW shall, within 21 days, produce the document retention policies in effect during 2008 and 2013 and the document retention policy currently in effect. It shall also, within 21 days, produce supplemental responses as set forth above.

IT IS SO ORDERED.

Dated: 03/15/16

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge